**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR CARLSTRÖM, STEPHEN BRUNE, VINACOSSA ENTERPRISES AB, VINACOSSA ENTERPRISES LTD, BOFLEXIBILITET SVERIGE AB, SBS RESURS DIREKT AB and SPARFLEX AB,<br><br>Plaintiffs,<br><br>v.<br><br>FOLKSAM ÖMSESIDIG LIVFÖRSÄKRING, SWEDBANK AB, SKATTEVERKET, FINANSINSPEKTIONEN, JENS HENRIKSSON, ERIK THEDÉEN, KATRIN, WESTLING PALM and others known and unknown.<br><br>Defendants. | Case No. 1:19-cv-11569 |

**SWEDBANK AB (PUBL) AND JENS HENRIKSSON'S MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS THE VERIFIED COMPLAINT**

William A. Burck
Christopher D. Kercher
Nicholas Hoy
Jared E. Ruocco
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendants Swedbank AB (publ) &*
*Jens Henriksson*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

SUMMARY OF ALLEGATIONS ........................................................................................ 2

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT ........................................................................................................................ 5

I.      THE COURT LACKS JURISDICTION OVER SWEDBANK AND
HENRIKSSON ............................................................................................................. 5

II.     THE COMPLAINT FAILS TO STATE A RICO CLAIM ......................................... 9

      A.    Plaintiffs Have Not Alleged That They Suffered A Domestic Injury .................... 9

      B.    The Complaint Fails To State The Essential Elements Of A RICO Claim .......... 11

           1.    The Complaint Does Not Adequately Allege That Swedbank or
Henriksson Committed A Single Predicate Act......................................... 11

               (a)   *Mail and Wire Fraud (18 U.S.C. §§ 1341 &1343)* ........................ 11

               (b)   *Conspiracy to Commit Mail and Wire Fraud (18 U.S.C.
§ 1349)* .......................................................................................... 13

               (c)   *Conspiracy to Commit Murder (18 U.S.C. § 1961(1)(A))* ............ 14

               (d)   *Travel Act Violations (18 U.S.C. § 1952)* .................................... 14

               (e)   *Money Laundering (18 U.S.C. §§ 1956 & 1957)* .......................... 15

               (f)   *Conspiracy to Commit Money Laundering (18 U.S.C.
§ 1956(h))* ...................................................................................... 17

               (g)   *Hobbs Act Violation (18 U.S.C. § 1951(a))* ................................ 17

           2.    The Complaint Does Not Adequately Plead A "Pattern" Of
Racketeering Activity ............................................................................... 18

           3.    Plaintiffs Have Failed To Plead The Existence of A RICO
Enterprise ................................................................................................. 19

      C.    The Complaint Fails To State A RICO Conspiracy Claim ................................ 21

III.    THE COMPLAINT FAILS TO STATE A CFAA CLAIM ...................................... 21

IV.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
JURISDICTION OVER PLAINTIFFS' PENDENT CLAIMS.................................. 22

V.    THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION BASED
ON *FORUM NON CONVENIENS* ........................................................................ 22

      A.    Plaintiffs' Choice Of Forum Is Not Entitled To Deference .................................. 23

      B.    Sweden Provides An Adequate Alternative Forum .............................................. 24

     C.      The Private And Public Interest Factors Weigh In Favor Of Dismissal................24

VI.    THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE ................25

CONCLUSION..................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abbott Labs. v. Adelphia Supply USA*,
  2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ............................................................. 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 5

*Bascuñán v. Elsaca*,
  874 F.3d 806 (2d Cir. 2017) ............................................................................. 10, 11

*Beck v. Prupis*,
  529 U.S. 494 (2000) ................................................................................................ 13

*Bernstein v. Misk*,
  948 F. Supp. 228 (E.D.N.Y. 1997) ....................................................................... 15

*Beter v. Murdoch*,
  2018 WL 3323162 (S.D.N.Y. June 22, 2018) ....................................................... 20

*Boneta v. Rolex Watch USA, Inc.*,
  232 F. Supp. 3d 354 (S.D.N.Y. 2017) ................................................................... 12

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016) .................................................................................... 6

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) ...................................................................................... 9

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
  2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ....................................................... 20

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .................................................................................................. 6

*Dandong Old N.E. Agric. & Animal Husbandry Co. v. Hu*,
  2017 WL 3328239 (S.D.N.Y. Aug. 3, 2017) .................................................... 10, 11

*Dennis v. JPMorgan Chase & Co.*,
  343 F. Supp. 3d 122 (S.D.N.Y. 2018) ..................................................................... 9

*Elsevier, Inc. v. Grossman*,
  199 F. Supp. 3d 768 (S.D.N.Y. 2016) ................................................................... 10

*European Cmty. v. RJR Nabisco, Inc.*,
  764 F.3d 129 (2d Cir. 2014),
  *rev'd on other grounds*, 136 S. Ct. 2090 (2016) ................................................... 16

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
  218 F. Supp. 2d 369 (S.D.N.Y. 2002) ................................................................. 6, 7

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004) ................................................................................... 19

*GICC Cap. v. Tech. Fin. Grp.*,
   67 F.3d 463 (S.D.N.Y. 1995) ........................................................................... 19

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................................... 19

*Huntemann v. City of Yonkers*,
   1997 WL 527880 (S.D.N.Y. Aug. 25, 1997) ..................................................... 18

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
   2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ...................................................... 7

*In re Petrobras Sec. Litig.*,
   393 F. Supp. 3d 376 (S.D.N.Y. 2019) ................................................................ 6

*In re SSA Bonds Antitrust Litig.*,
   420 F. Supp. 3d 219 (S.D.N.Y. 2019) .............................................................. 25

*Iragorri v. United Tech. Corp.*,
   274 F.3d 65 (2d Cir. 2001) .............................................................................. 24

*Jonas v. Estate of Leven*,
   116 F. Supp. 3d 314 (S.D.N.Y. 2015) ................................................................ 8

*Jus Punjabi, LLC v. Get Punjabi US, Inc.*,
   640 F. App'x 56 (2d Cir. 2016) ....................................................................... 16

*Karoon v. Credit Suisse Grp. AG*,
   2016 WL 815278 (S.D.N.Y. Feb. 29, 2016) ....................................................... 8

*Khan v. Emerald Operating Partners, LLC*,
   2020 WL 85387 (S.D.N.Y. Jan. 2, 2020) ........................................................... 8

*Kimm v. Lee*,
   2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) ........................................................ 13

*Klein & Co. Futures, Inc. v. Board of Trade of City of New York*,
   464 F.3d 255 (2d Cir. 2006) ............................................................................ 22

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   191 F.3d 229 (2d Cir. 1999) ............................................................................ 10

*Lfoundry Rousset SAS v. Amtel*,
   2015 WL 4461617 (S.D.N.Y. July 21, 2015) .................................................... 23

*Lynch v. Amoruso*,
   232 F. Supp. 3d 460 (S.D.N.Y. 2017) .............................................................. 13

*Mackin v. Auberger*,
   59 F. Supp. 3d 528 (W.D.N.Y. 2014) ............................................................... 18

*Malvar Egerique v. Chowaiki*,
   2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020) ..................................................... 9

*Manson v. Stacescu*,
   11 F.3d 1127 (2d Cir. 1993) ............................................................................ 10

*Mazloum v. Int'l Commerce Corp.*,
829 F. Supp. 2d 223 (S.D.N.Y. 2011) .................................................................. 5, 7

*Moll v. US Life Title Ins. Co. of New York*,
654 F. Supp. 1012 (S.D.N.Y. 1987) ....................................................................... 20

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017) ................................................................... 20

*Nat'l Grp. for Comm. & Comp. Ltd. v. Lucent Tech, Inc.*,
420 F. Supp. 2d 253 (S.D.N.Y 2006) .................................................................... 21

*Newman v. Jewish Agency for Israel*,
2017 WL 6628616 (S.D.N.Y. Dec. 28, 2017) .................................................. 8, 12

*Online Payment Solutions Inc. v. Svenska Handelsbanken AB*,
638 F. Supp. 2d 375 (S.D.N.Y. 2009) .............................................................. 24, 25

*People v. Arroyo*,
93 N.Y.2d 990 (N.Y. 1999) ................................................................................... 14

*People v. Ozarowski*,
38 N.Y.2d 481 (1976) ............................................................................................ 14

*People v. Reyes*,
31 N.Y.S.3d 520 (2018) ......................................................................................... 14

*Pohlot v. Pohlot*,
664 F. Supp. 112 (S.D.N.Y. 1987) ................................................................... 10, 18

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
329 F.3d 64 (2d Cir. 2003) .................................................................................... 24

*Pramer S.C.A. v. Abaplus Int'l Corp.*,
907 N.Y.S.2d 154 (1st Dep't 2010) ........................................................................ 8

*Propst v. Ass'n of Flight Attendants*,
546 F. Supp. 2d 14 (E.D.N.Y. 2008) ..................................................................... 20

*Ramiro Aviles v. S&P Global, Inc.*,
380 F. Supp. 3d 221 (S.D.N.Y. 2019) .................................................................... 18

*Redtail Leasing, Inc. v. Bellezza*,
1997 WL 603496 (S.D.N.Y. Sept. 30 1997) ......................................................... 21

*Reich v. Lopez*,
38 F. Supp. 3d 436 (S.D.N.Y. 2014),
*aff'd*, 858 F.3d 55 (2d Cir. 2017) ........................................................................... 6

*Rivera v. Golden Nat'l. Mortg. Banking Corp.*,
2005 WL 1514043 (S.D.N.Y. June 27, 2005) .............................................. 5, 12, 18

*RJR Nabisco, Inc. v. European Cmty.*,
136 S. Ct. 2090 (2016) ............................................................................................. 9

*Rosner v. Bank of China*,
528 F. Supp. 2d 419 (S.D.N.Y. 2007) .................................................................... 17

*Scheidler v. Nat'l Org. for Women, Inc.*,
  537 U.S. 393 (2003) .................................................................................. 18

*Siegel v. HSBC Holdings, PLC*,
  2018 WL 501610 (S.D.N.Y. Jan. 19, 2018) .............................................. 5

*Smulley v. Fed. Hous. Fin. Agency*,
  754 F. App'x 18 (2d Cir. 2018) ............................................................... 13

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*,
  277 F. Supp. 3d 521 (S.D.N.Y. 2017) ..................................................... 21

*Stair v. Calhoun*,
  2009 WL 792189 (E.D.N.Y. Mar. 23, 2009) ........................................... 25

*Tamam v. Fransabank SAL*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) ....................................................... 6

*Terminate Control Corp. v. Horowitz*,
  28 F.3d 1335 (2d Cir. 1994) ............................................................ 13, 17

*TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*,
  2020 WL 1322872 (S.D.N.Y. Mar. 20, 2020) .......................................... 21

*Tymoshenko v. Firtash*,
  2015 WL 5505841 (S.D.N.Y. Sept. 18, 2015) .......................................... 13

*United States v. Humphries*,
  650 Fed. App'x 78 (2d Cir. 2016) ............................................................ 15

*United States. v. Myerson*,
  18 F.3d 153 (2d Cir. 1994) ...................................................................... 15

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................................. 9

*Walden v. Lorcom Techs., Inc.*,
  2009 WL 799955 (E.D.N.Y. Mar. 24, 2009) .............................................. 7

*West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*,
  2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) ............................... 12, 16, 25

*Westchester Cty. Indep. Party v. Astorino*,
  137 F. Supp. 3d 586 (S.D.N.Y. 2015) ..................................................... 19

*Wilson v. ImageSat Intern. N.V.*,
  2008 WL 2851511 (S.D.N.Y. July 22, 2008) ........................................... 23

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*,
  2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016) ........................ 12, 15, 21, 22

*Zaro Licensing, Inc. v. Cinmar, Inc.*,
  779 F. Supp. 276 (S.D.N.Y. 1991) .......................................................... 11

## **Statutory Authorities**

18 U.S.C. § 1030(a)(2) ................................................................................. 21

18 U.S.C. § 1951(a) ................................................................................................ 17

18 U.S.C. § 1951(b)(2) ........................................................................................... 17

18 U.S.C. § 1952(b) ................................................................................................ 15

18 U.S.C. § 1956(a) .......................................................................................... 15, 17

18 U.S.C. § 1956(a)(1)(A)(i) ............................................................................ 16, 17

18 U.S.C. § 1956(a)(1)(B)(i) ................................................................................... 17

18 U.S.C. § 1956(a)(2) ............................................................................................ 15

18 U.S.C. § 1956(a)(2)(A) ...................................................................................... 16

18 U.S.C. § 1956(a)(2)(B)(i) ................................................................................... 16

18 U.S.C. § 1956(c)(7) ............................................................................................ 16

18 U.S.C. § 1956(f) ................................................................................................. 15

18 U.S.C. § 1957(a) .......................................................................................... 16, 17

18 U.S.C. § 1961(1) .................................................................................... 13, 14, 18

18 U.S.C. § 1961(5) .......................................................................................... 11, 14

18 U.S.C. § 1962(c) ............................................................................................. 4, 21

18 U.S.C. § 1962(d) ............................................................................................. 4, 21

18 U.S.C. § 3077(2) ................................................................................................ 16

N.Y. Penal Law § 105.15 ........................................................................................ 14

## PRELIMINARY STATEMENT

Granted every implausible inference, this lawsuit remains a Swedish business dispute shabbily dressed up as a RICO claim and improperly brought against Swedish defendants in United States federal court. The Complaint appears to concern the alleged cancellation of a contract between a company controlled by Plaintiff Victor Carlström, a disgraced Swedish financial broker, and Defendant Folksam Ömsesidig Livförsäkring ("Folksam"), one of Sweden's largest insurance companies. But the Complaint spins this foreign, workaday business dispute into a fantastical tale closer to a drugstore spy thriller than an actionable legal claim. In a Complaint devoid of specificity or a jurisdictional basis, Plaintiffs allege a conspiracy among elements within the Swedish government and a who's who of Swedish companies and private citizens to do everything from destroy Carlström's businesses to attempt his murder.

Among the role players in the alleged conspiracy are Defendants Swedbank AB (publ) ("Swedbank"),[1] one of Sweden's largest banks, and its CEO, Jens Henriksson. The Complaint against them is fatally defective in virtually every way. As a threshold matter, it fails to sufficiently allege that they are subject to personal jurisdiction in New York, and, in fact, acknowledges that Swedbank is a Swedish company and Henriksson is a Swedish citizen. Plaintiffs' RICO claims are also barred because they do not allege that Plaintiffs—basically all of whom are Swedish citizens and entities—suffered any domestic RICO injury to their business or property, as required.

Beyond these threshold issues, the Complaint does not adequately plead the essential elements of a RICO claim against Swedbank or Henriksson. While the Complaint names eight predicate RICO acts, the misconduct it attributes to Swedbank and Henriksson does not fit the

---

[1] The full corporate name of Swedbank AB is "Swedbank AB (publ)." *See* June 25, 2020 Declaration of Stefan Frisk In Support of Motion to Dismiss ("Frisk Decl.") ¶ 1 n.1.

required elements for any of them, and thus falls well short of establishing that Swedbank or Henriksson engaged in a "pattern" of racketeering activity. And while they pay lip service to the statute by referring to a shadowy (and fictitious) "Enterprise" of Swedish governmental agencies, companies, and individuals, Plaintiffs fail to provide enough detail concerning its formation or structure to sustain a RICO claim.

Plaintiffs' claim under the Computer Fraud and Abuse Act ("CFAA") is equally defective. It is based on a single paragraph in the Complaint that does not state that either Swedbank or Henriksson actually unlawfully broke into a computer or committed any other conduct that would constitute a violation of the statute.

At a minimum, assuming that the Complaint had merit, this district is not a convenient forum. Nearly all of the parties are Swedish citizens, the events alleged in the Complaint principally occurred in Sweden, and Plaintiffs' non-federal claims involve questions of Swedish law. As a result, the Court should exercise its discretion to decline jurisdiction in favor of a Swedish court.

## SUMMARY OF ALLEGATIONS

Swedbank is a bank "duly formed and domiciled in Sweden," based in Stockholm, that offers retail banking, asset management, and other financial services to millions of customers in the Nordic and Baltic regions. Compl. ¶ 14. Henriksson is a citizen of Sweden and resident of Stockholm. *Id.* ¶ 17. He joined Swedbank as its President and CEO since 2019, and before that, was the President and CEO of Folksam. *Id.* ¶ 23 & n.4.

Cutting through the commotion of irrelevant details in the Complaint, Plaintiffs identify three schemes that allegedly injured their business or property. First, Plaintiffs allege that in 2015, Folksam terminated a contract with Plaintiff SBS Resurs Direkt AB ("Resurs Direkt"), a Swedish fund controlled by Carlström, causing Carlström to lose commissions and ultimately his customer

base after he and Resurs Direkt were investigated for financial fraud by the Defendant Swedish Financial Supervisory Authority. *See id.* ¶¶ 90-125.[2]  Second, Plaintiffs allege that beginning in 2017, the Swedish Financial Supervisory Authority and Defendant Swedish Tax Agency conspired with Folksam to frustrate a prospective mortgage financing joint venture between two other Swedish Carlström-controlled entities, Plaintiffs Sparflex AB ("Sparflex") and Boflexibilitet i Sverige AB ("Boflex"), and another Swedish firm, Exceed Capital AB ("Exceed"). *See id.* ¶¶ 126-142, 155-171.  Third, the deal with Exceed having been foiled, Plaintiffs allege the Swedish Financial Supervisory Authority interfered with a similar prospective joint venture between Sparflex and Boflex, on the one hand, and Swedbank, on the other. *See id.* ¶¶ 172-181.

Notably, by Plaintiffs' own telling, each of their alleged injuries was suffered in Sweden and had no connection to the United States.  The Complaint alleges that Resurs Direkt represented 10,000 customers and had four offices in Sweden, and Carlström complains that the collapse of Resurs Direkt "deprived him of any opportunity to make a living in Sweden and/or Europe." *Id.* ¶ 36, 115-16.  Boflex was a Swedish company set up to "issue mortgages throughout Sweden." *Id.* ¶ 155.  The alleged prospective joint venture between Sparflex, Boflex, and Swedbank concerned the "distribut[ion of] Swedbank's mortgages throughout Sweden," *id.* ¶ 172, and all of the discussions regarding that venture occurred in Sweden. *Id.* ¶¶ 174, 178.  Put simply, the "schemes" alleged in the Complaint are thinly-pleaded Swedish contract or business tort claims between Swedish counterparties causing alleged injuries in Sweden to Swedish Plaintiffs.

But even then, the lack of an actual pleaded nexus between Henriksson or Swedbank and those claims bears emphasis.  The gravamen of the Complaint is that Folksam terminated a contract

---

[2]  The terms "Swedish Tax Agency," "Swedish Financial Supervisory," and "Swedish Pension Fund" shall have the same meanings ascribed to them in the Complaint.

that it had with one Carlström venture, and then Folksam and Swedish regulators warned potential Carlström counterparties and customers that they believed Carlström's new ventures to be fraudulent. *See, e.g., id.* ¶¶ 23-25, 170.  Henriksson is labeled the "manage[r]" of the racketeering enterprise, *id.* ¶ 26, but the only acts attributed to him in the Complaint are causing Folksam to cancel its contract with Resurs Direkt in 2015 and then "enlist[ing]" the Swedish authorities and Folksam employees to defame Carlström to clients and potential counterparties.  *See id.* ¶¶ 23-25. And Swedbank's pleaded role is even more limited.   While the Complaint superficially alleges that it joined the RICO enterprise along with the other Defendants "in or about 2015," *id.* ¶ 277, it elsewhere alleges that "Swedbank's [i]nvolvement" began three years later, in June 2018.  *Id.* ¶ 172.  Even then, the Complaint alleges only that Swedbank was approached by Carlström about the prospective mortgage deal, but after learning that he was subject to several pending investigations by Swedish authorities, declined to pursue it.  *Id.* ¶¶ 174-81.[3]

On the basis of these allegations, the Complaint accuses Swedbank and Henriksson of violations of the RICO statute, 18 U.S.C. §§ 1962(c) and (d) ("conduct" and "conspiracy" racketeering), on the basis of predicate acts ranging from mail and wire fraud to attempted murder, and the CFAA, *id.* § 1030(a).  Plaintiffs also advance three common law claims against Swedbank

---

[3]  The Complaint's other allegations of misconduct either have no pleaded connection to Plaintiffs or no pleaded connection to Swedbank or Henriksson.  The Complaint describes failed murder, break-in, and surveillance plots worthy of a Jason Bourne novel, but do not allege that Swedbank or Henriksson was involved or even aware of them.  Compl. ¶¶ 26, 239-66 .  It alleges that an unidentified person hacked into Carlström's computer, but does not plead facts that suggest the person was Swedbank or Henrikssson—and to the contrary, alleges that the hacker was Turkish. *Id.* ¶ 266.  Plaintiffs allege that Defendants used an entity called Indecap AB ("Indecap") to expropriate money from the Swedish Pension Fund, but that scheme allegedly took place in 2011 and 2012, long before the RICO enterprise was formed, and there is no allegation it affected Plaintiffs in any way.  *Id.* ¶¶ 33-58.  And the Complaint's allegations of Swedbank's involvement in the Panama Papers investigations likewise have no pleaded connection to Plaintiffs whatsoever. *See id.* ¶¶ 182-198.

and Henriksson, for tortious interference with contract, tortious interference with prospective

business advantage, and intentional infliction of emotional distress.

## STANDARD OF REVIEW

"On a motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears

the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to

bring suit." *Siegel v. HSBC Holdings, PLC*, 2018 WL 501610, at *2 (S.D.N.Y. Jan. 19, 2018).  To

meet its burden, a plaintiff "may not rely on conclusory statements without any supporting facts,

as such allegations would lack the factual specificity necessary to confer jurisdiction." *Mazloum*

*v. Int'l Commerce Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011).

A complaint will be dismissed on a Rule 12(b)(6) motion unless it contains "sufficient

factual matter" that, if "accepted as true, . . . state[s] a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim is facially

plausible only if the pleaded facts "allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.*  By contrast, "[a] pleading that offers labels

and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does

a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.*

(quotation marks omitted).[4]

## ARGUMENT

## I.   THE COURT LACKS JURISDICTION OVER SWEDBANK AND HENRIKSSON

The Complaint against Swedbank and Henriksson is barred at the threshold because

---

[4]   Allegations of fraud, such as the RICO predicate acts of mail and wire fraud pleaded in this case, must additionally satisfy the heightened particularity requirements of Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Rivera v. Golden Nat'l. Mortg. Banking Corp.*, 2005 WL 1514043, at *3 (S.D.N.Y. June 27, 2005).

Plaintiffs have not established a *prima facie* case for personal jurisdiction "with respect to each claim [they] assert[]." *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 397 (S.D.N.Y. 2002). "A *prima facie* showing of jurisdiction . . . means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction," *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010), and here, the Complaint pleads the opposite: allegations of harm suffered in Sweden and caused by a Swedish bank and its Swedish CEO.

As an initial matter, Plaintiffs apparently concede that neither Swedbank or Henriksson is subject to general personal jurisdiction in New York. *See* Compl. ¶ 2. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And only "in a truly 'exceptional' case" will general jurisdiction extend to a corporation other than where it "is incorporated or maintains its principal place of business," *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016), or "over [an] individual[]" other than "in a state that is . . . their domicile." *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017). For a business that "is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'" *Id.*; *see also In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 382 (S.D.N.Y. 2019) ("[E]ven extensive business contacts such as significant physical infrastructure and thousands of employees in a particular state do not constitute such an exceptional case."). There are no allegations in the Complaint that either Swedbank or Henriksson is "at home" in New York. To the contrary, the Complaint correctly alleges that Swedbank is a corporation "duly formed and domiciled in Sweden," and that Henriksson is "a citizen . . . and a resident of . . . Sweden." Compl. ¶¶ 14, 18.

Plaintiffs' allegations refute, rather than establish, general jurisdiction.[5]

Plaintiffs likewise do not assert any statutory basis for specific jurisdiction, and the facts alleged do not support one. The Complaint's jurisdictional allegations amount to a single conclusory statement that the Court has personal jurisdiction over "Defendants" because they "committed multiple" unspecified acts of mail, wire, and computer fraud and money laundering in the district. Compl. ¶ 2. But these sorts of "vague and conclusory allegations lack[] . . . [the] factual specificity" needed to establish personal jurisdiction. *First Capital*, 218 F. Supp. 2d at 398; *see also Mazloum*, 829 F. Supp. 2d at 227 ("In resolving Rule 12(b)(2) motions, a court is not bound to accept as true a legal conclusion couched as a factual allegation.") (quotation marks omitted). Regardless, under New York's long-arm statute, the exercise of specific personal jurisdiction over a non-domiciliary is permitted only in the limited circumstances in which the "cause of action aris[es] from" one of four acts: (1) transacting business within the state or contracting to supply goods or services in the state; (2) committing a tortious act within the state; (3) committing of a tortious act outside the state that causes injury to person or property within the state; or (4) owning, using, or possessing real property within the state. N.Y. C.P.L.R. § 302(a). Plaintiffs' claims arise out of none of these circumstances.

---

[5] While Swedbank has a small New York branch and is licensed to conduct business in New York, Compl. ¶ 183, that is insufficient to establish general personal jurisdiction. *See, e.g., In re LIBOR-Based Financial Instruments Antitrust Litig.*, 2015 WL 6243526, at *26 (S.D.N.Y. Oct. 20, 2015) (holding there was no general personal jurisdiction over foreign banks in New York notwithstanding their licensure by New York's Department of Financial Services ("DFS") and their significant business activities in the state). Similarly, Henriksson cannot be subjected to general personal jurisdiction in New York by virtue of his current executive position at Swedbank or his former position at Folksam. *See, e.g., Walden v. Lorcom Techs., Inc.*, 2009 WL 799955, at *3 (E.D.N.Y. Mar. 24, 2009) (holding there was no personal jurisdiction over officer of company in his "individual capacity if the officer is 'doing business' on behalf of a corporation").

*First*, specific jurisdiction does not exist because Plaintiffs fail to allege an "articulable nexus between [any] business transacted" by Swedbank or Henriksson in New York "and the cause[s] of action sued upon." *Khan v. Emerald Operating Partners, LLC*, 2020 WL 85387, at *2 (S.D.N.Y. Jan. 2, 2020) (quotation marks omitted); *see also Pramer S.C.A. v Abaplus Int'l Corp.*, 907 N.Y.S.2d 154, 158 (1st Dep't 2010) ("[T]here must . . . exist a substantial relationship between those particular acts and the transaction giving rise to the plaintiff's cause of action."). No allegation in the Complaint is even directed at this statutory provision, and it cannot serve as a basis for jurisdiction for the simple reason that the Complaint fails to mention any business whatsoever transacted by either Swedbank or Henriksson in New York.

*Second*, New York's long-arm statute authorizes jurisdiction only where a tortious act was committed in New York or inflicted an injury in New York, N.Y. C.P.L.R. 302(a)(2)-(3), and the Complaint is devoid of any allegation that Swedbank or Henriksson used the mail or wires in (or directed them at) New York, accessed a computer in New York, engaged in money laundering in New York, or inflicted an injury suffered in the state. Indeed, the only acts Swedbank or Henriksson are alleged to have committed involving Plaintiffs took place when all of the relevant parties were in Sweden. *See supra* at 2-3.

*Third*, because the Complaint fails to allege any real property owned by Swedbank or Henriksson in New York, much less a link between link between that property and the causes of action alleged, specific jurisdiction cannot rest on their ownership of property. *See, e.g.*, *Karoon v. Credit Suisse Grp. AG*, 2016 WL 815278, at *5 (S.D.N.Y. Feb. 29, 2016); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 333 (S.D.N.Y. 2015).[6]

---

[6] To the extent Plaintiffs attempt to assert jurisdiction under Federal Rule of Civil Procedure 4(k)(2) or Section 1965, their "failure to establish minimum contacts and the reasonableness of exercising jurisdiction under C.P.L.R. § 302 extends with equal force to" the federal long arm

## II.     THE COMPLAINT FAILS TO STATE A RICO CLAIM

### A.     Plaintiffs Have Not Alleged That They Suffered A Domestic Injury

Even if Swedbank or Henriksson were subject to this Court's jurisdiction, Plaintiffs' RICO claims would be subject to dismissal because the RICO statute "does not allow recovery for foreign injuries," and Plaintiffs have failed to allege "a domestic injury to [their] business or property." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2111 (2016).  In determining whether an alleged RICO injury is domestic or foreign, courts look to the location where the alleged RICO injury was suffered, and "to the extent Plaintiff's property was located abroad when it was stolen or harmed, he has not alleged a domestic injury."  *Malvar Egerique v. Chowaiki*, 2020 WL 1974228, at *22 (S.D.N.Y. Apr. 24, 2020).

The three schemes alleged to have caused injury to Plaintiffs' business or property, *see supra* at 2-3, involved interferences with the existing or prospective contractual relationships of three **Swedish** companies (Resurs Direkt, Sparflex, and Boflex), all controlled by a **Swedish** citizen

---

statute." *Newman v. Jewish Agency for Israel*, 2017 WL 6628616, at *4 (S.D.N.Y. Dec. 28, 2017). Rule 4(k)(2) can serve as a basis for jurisdiction only to the extent "consistent with the United States Constitution," and courts require, among other things, "that the plaintiff show ***some sort of causal relationship between a defendant's U.S. contacts and the episode in suit***, and [that] the plaintiff's claim . . . in some way arise from the defendants' purposeful contacts with the forum." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) (emphasis added); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a state to exercise jurisdiction consistent with due process, ***the defendant's suit-related conduct*** must create a substantial connection with the forum State.") (emphasis added); *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 202-03 (S.D.N.Y. 2018) (holding that exercise of personal jurisdiction for RICO claim was subject to constitutional due process and dismissing for lack of personal jurisdiction where the complaint failed to allege sufficient minimum contacts between foreign defendants and the U.S. to establish general or specific jurisdiction).  The Complaint is devoid of allegations that Henriksson ever set foot in New York or otherwise committed wrongdoing in the state.  And Swedbank's only alleged connection to New York—*i.e.*, statements made to New York's DFS in the context of a Panama Papers investigation, Compl. ¶¶ 184-88—does not relate at all to Plaintiffs' claims and thus does not constitute the requisite "suit-related conduct" to establish Swedbank's minimum contacts in the jurisdiction.  *See generally id.* ¶¶ 274-94.

and resident (Carlström), attempting to do business with **Swedish** counterparties (Folksam, Exceed, Swedbank) in **Sweden**.[7]  But "a foreign corporation cannot allege a domestic injury to its business if it only experiences the effects of an alleged RICO scheme abroad."  *Dandong Old N.E. Agric. & Animal Husbandry Co. v. Hu*, 2017 WL 3328239, at *14 (S.D.N.Y. Aug. 3, 2017) (holding that plaintiff suffered RICO injury in China because that was "the only place its business had ever been located" and dismissing claim for lack of domestic injury).  And an "injury to . . . business" is not domestic when, as here, the alleged "negative business consequences" occurred outside the United States.  *Elsevier, Inc. v. Grossman*, 199 F. Supp. 3d 768, 786 (S.D.N.Y. 2016); *see also Bascuñán v. Elsaca,* 874 F.3d 806, 818 (2d Cir. 2017) (no domestic injury where defendant allegedly "stole funds that were legally owned by a foreign corporation (and beneficially owned by . . . a foreign citizen and resident) and held in a foreign bank account")).[8]

Plaintiffs' apparent attempt to manufacture a domestic injury by stating that Boflex "intended" at some unspecified time to finance mortgages in the United States, Compl. ¶ 25, is insufficient.  The Complaint provides no factual support for Boflex's domestic plans.  To the contrary, it specifically alleges that Boflex was a **Swedish** company that was "designed to be the

---

[7]  While Plaintiff Stephen Brune is allegedly a New York resident, he has not alleged an injury independent of his alleged ownership stake in Boflex.  As a result, his injury is "wholly derivative of harm to a third party" and thus he individually "lack[s] standing to sue under RICO."  *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993) ("A shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock."); *see also Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999) ("[W]here a plaintiff complains of injuries that are wholly derivative of harm to a third party, plaintiff's injuries are . . . too remote, as a matter of law, to support recovery.").

[8]  The only injury any of the Plaintiffs even arguably suffered in the United States is Carlström's alleged emotional distress as a result of a murder plot.  But emotional distress is not a cognizable RICO injury.  *See, e.g.*, *Bascuñán v. Elsaca,* 874 F.3d 806, 817 (2d Cir. 2017) ("A plaintiff bringing a civil RICO claim must allege an injury to his 'business or property' [and] cannot, for example, recover for 'personal injuries.'"); *Pohlot v. Pohlot*, 664 F. Supp. 112, 116 (S.D.N.Y. 1987) (alleged emotional distress inflicted by defendant's conspiracy to murder was not a cognizable RICO injury).

corporate vehicle through which Carlström and Brune would issue mortgages ***throughout Sweden***," in partnership with other ***Swedish*** companies (Exceed and Swedbank), and that Defendants interfered with Boflex's efforts by conspiring with ***Swedish*** regulators to deny them necessary ***Swedish*** regulatory approvals. *Id.* ¶ 155 (emphasis added). Plaintiffs do not explain how any of these alleged acts by the ***Swedish*** government prevented Boflex from financing mortgages in the United States. Regardless, even if the Complaint sufficiently alleged Boflex's intent to secure domestic business, loss of that prospective opportunity does not constitute a "domestic injury" under RICO. *See, e.g.*, *Dandong*, 2017 WL 3328239, at *13 ("[W]hile Defendant's conduct may have impaired Plaintiff's later ability to secure soybean suppliers in the United States, such a loss of potential business opportunity is not a cognizable domestic injury.").

### B.      The Complaint Fails To State The Essential Elements Of A RICO Claim

#### 1.      The Complaint Does Not Adequately Allege That Swedbank or Henriksson Committed A Single Predicate Act

To adequately plead a civil RICO claim, a complaint must state allegations to support a "pattern of racketeering activity," and a "pattern" requires at least two predicate acts. 18 U.S.C. § 1961(5). The Complaint fails this test straightforwardly. While Plaintiffs tick off a laundry list of eight separate statutory predicates supposedly committed by "Defendants," Compl. ¶ 282, it is not enough to "[p]arrot[] the statutory language." *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 284 (S.D.N.Y. 1991). For the reasons described below, Plaintiffs have failed to adequately plead a ***single*** predicate act against either Swedbank or Henrikssson.

#### (a)      *Mail and Wire Fraud (18 U.S.C. §§ 1341 &1343)*

"There are three essential elements to mail or wire fraud: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Bascuñán*, 927 F.3d at 122 (quotation marks omitted). Plaintiffs satisfy none of them.

*First*, Plaintiffs' allegations against Swedbank and Henriksson founder for the simple reason that the Complaint does not allege that either of them used the mail or wires. The Complaint summarily accuses all of the "Defendants" of using the mail and wires in furtherance of their fraudulent scheme, Compl. ¶¶ 282 (a)-(b), but is silent on who among them actually used the wires or mail, when or from where the communications were purportedly made, and to whom they were sent. This form of vague and undifferentiated group pleading would be impermissible under any pleading standard, but it falls well short of the specificity required by Rule 9(b). *See, e.g.*, *Newman v. Jewish Agency for Israel*, 2017 WL 6628616, at *5 (S.D.N.Y. Dec. 28, 2017) (complaint failed to state mail or wire fraud as predicate acts where it "alleg[ed] in conclusory fashion that the Defendants devised a fraud using mail and wires"); *Rivera*, 2005 WL 1514043, at *3 (same, where the complaint "fail[ed] to state with particularity when or which Defendants committed the predicate acts"); *Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp. 3d 354, 359 (S.D.N.Y. 2017) (same, where "the Complaint does not specify the speaker, place or manner of either communication as required by Rule 9(b), only that an unnamed . . . counsel for [defendant] participated, and that the communication was by mail or wire"); *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, 2016 WL 1298987, at *5 (S.D.N.Y. Mar. 31, 2016) (refusing to credit RICO "allegations [against one defendant] that ascribe[d] actions to all Defendants as an undifferentiated group, without identifying any role for [that defendant] in particular"); *West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *7 (S.D.N.Y. Sept. 29, 2004) (a plaintiff that has alleged fraud as a RICO predicate "must particularize . . . each defendant's participation in the fraud").

*Second*, the Complaint does not allege that any fraudulent statements were made by either Swedbank or Henriksson. To satisfy Rule 9(b), Plaintiffs were required to "detail the specific

statements that are false or fraudulent, . . . and explain why the statements were fraudulent." *Smulley v. Fed. Hous. Fin. Agency*, 754 F. App'x 18, 23 (2d Cir. 2018) (quotation marks omitted). The Complaint alleges that Plaintiffs were the targets of the mail and wire fraud, Compl. ¶¶ 282 (a)-(b), but does not describe any statements (much less ones made by mail or wire) that either Swedbank or Henriksson made to Plaintiffs that were allegedly untrue. *See, e.g.*, *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 466 (S.D.N.Y. 2017) (pleading did not satisfy Rule 9(b) when it failed to explain "what exactly was fraudulent or illegal about" an alleged mailing).

*Third*, inasmuch as the Complaint fails to plead any fraud directed at them by Swedbank or Henriksson, it also fails to allege that a fraudulent scheme was designed to deprive them of their money or property. *See, e.g.*, *Tymoshenko v. Firtash*, 2015 WL 5505841, at *5 (S.D.N.Y. Sept. 18, 2015) (holding that "the conclusory allegations that Plaintiffs were the 'targets or intended victims' of the Enterprise is insufficient," where the plaintiffs did "not plead facts adequate to support the conclusion that obtaining money from the[m] was the purpose or object of the alleged scheme"); *Kimm v. Lee*, 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13, 2005) ("It is plain that [i]ntent to injure is not the equivalent of intent to defraud.").

### (b)     Conspiracy to Commit Mail and Wire Fraud (18 U.S.C. § 1349)

Section 1961(1) of the RICO statute lists the specific predicate acts that can qualify as "racketeering activity," and the Supreme Court is clear that the list is exhaustive. *See Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000). "Attempt and conspiracy" under 18 U.S.C. § 1349 is not included, and thus cannot form part of a "pattern of racketeering activity." *See, e.g.*, *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1344 (2d Cir. 1994).

(c)      *Conspiracy to Commit Murder (18 U.S.C. § 1961(1)(A))*[9]

Plaintiffs' claim that the Swedish government and two of its largest financial institutions conspired to murder Carlström is an outrageous fiction.  It is also completely unsupported by the allegations in their own Complaint.  Plaintiffs were required to plead, among other things, that Swedbank and Henriksson "ha[d] the intent to bring about conduct constituting second degree murder" and that they agreed with the other Defendants to carry the murder out.  *People v. Arroyo*, 93 N.Y.2d 990, 991 (N.Y. 1999); *see also* N.Y. Penal Law § 105.15 (requiring that a person act "with intent that conduct constituting [second degree murder] be performed" in order to be guilty of conspiracy); *People v. Ozarowski*, 38 N.Y.2d 481, 489 (1976) (a conviction for conspiracy requires that "the specific intent proved . . . support[s] the particular felonies toward which the indictment charges the conspiracy were directed"); *People v. Reyes*, 31 N.Y.S.3d 520, 520-521 (2018) ("[I]t is fundamental that [to] be convicted of conspiracy . . . the defendant [must] enter[] into a criminal agreement with at least one other person.").  But even if the Complaint plausibly alleged a murder plot (which it does not), there are no specific allegations tying Swedbank or Henriksson to the plot, *see* Compl. ¶¶ 26, 239-66, and certainly nothing to support the inference that they possessed the requisite intent or even knew of it.

(d)      *Travel Act Violations (18 U.S.C. § 1952)*

Plaintiffs allege that "Defendants" violated the Travel Act by "travel[ing] internationally in furtherance of a scheme to defraud Plaintiffs."  Compl. ¶ 282(e).  That allegation fails to sufficiently plead a Travel Act violation by Swedbank or Henriksson, however, because the Complaint does not allege facts showing that either of them (or any of their associates) actually

---

[9]   Plaintiffs' allege that Defendants violated 18 U.S.C. § 1959(a), which prohibits taking violent action in furtherance of a racketeering enterprise.  Compl. ¶ 282(d).  However, 18 U.S.C. § 1959(a) is not a predicate RICO offense.  18 U.S.C. §§ 1961(1) and (5).

traveled internationally.  *See, e.g.*, *Worldwide*, 2016 WL 1298987, at *8 (dismissing Travel Act claim where "the complaint fail[ed] to allege with any specificity that the [defendants] . . . travelled in interstate commerce as part of their bribery or fraudulent scheme"); *Bernstein v. Misk*, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997) (same, where "plaintiffs [did] not give[] adequate notice to defendants of what facility of interstate commerce was used").  Even if it had, the crimes Plaintiffs allege "Defendants" were attempting to further through international travel—mail fraud and wire fraud—are not considered "unlawful activity" under the Travel Act.  *See* 18 U.S.C. § 1952(b); *see also United States v. Humphries*, 650 Fed. App'x 78, 80, n.2 (2d Cir. 2016).

### (e)     Money Laundering (18 U.S.C. §§ 1956 & 1957)

The Complaint's allegations that certain Swedbank accountholders were implicated in Panama Papers investigations, Compl. ¶¶ 182-98, are completely untethered from any of Plaintiffs' claims and have "nothing directly or remotely to do with the furtherance of the [alleged] fraud." *United States. v. Myerson*, 18 F.3d 153, 164 (2d Cir. 1994).  But even if they were relevant, they do not give rise to predicate acts of money laundering for at least three independent reasons.

*First*, the Complaint does not allege that the alleged money laundering was connected to the United States or that Swedbank or Henriksson are United States "persons."  *See* 18 U.S.C. § 1956(a)(2) (requiring transaction to be conducted "from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States"); 18 U.S.C. 1956(a) and (d) (requiring that "the offense take place in the United States or in the special maritime or territorial jurisdiction of the United States" or be committed by a "United States person"); 18 U.S.C. § 1956(f) (limiting extraterritorial scope to conduct that involves a U.S. citizen or occurs at least in part in the U.S.).  The only references to money laundering in the Complaint allegedly took place in Russia and Azerbaijan, not the United States. Compl. ¶ 191.  And the Complaint alleges facts demonstrating that Swedbank and Henriksson are

15

*not* United States citizens or "person[s]," as that term is defined in the statute.  Compl. ¶¶ 14, 17; *see, e.g.*, *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 137 (2d Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 2090 (2016) (the money laundering statute explicitly applies to extraterritorial conduct "only if . . . the conduct is by a United States citizen") (internal citations omitted).[10]

> *Second*, the Complaint does not allege that any financial transfers involved the proceeds of "specified unlawful activity" or were intended to promote or conceal any "specified criminal activity."[11]  Under the federal money laundering statutes, "specified criminal activity" refers to specific listed criminal offenses, *see* 18 U.S.C. § 1956(c)(7), and the Complaint does not identify which of those offenses the allegedly laundered funds were derived from or were intended to promote or conceal.  Instead, Plaintiffs make several conclusory allegations about suspicious or illegal behavior committed by Swedbank accountholders, without identifying which federal criminal statutes that conduct purportedly violated or even alleging that Swedbank or Henriksson were directly involved in the conduct itself.  *See* Compl. ¶¶ 185, 189, 191, 197.  This failure dooms their assertion of money laundering as a predicate offense.  *See, e.g.*, *Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56, 58 (2d Cir. 2016) (no money laundering violation where plaintiffs "failed to plausibly plead that the transactions 'involved the proceeds of specified unlawful activity' . . . ."); *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL

---

[10]   United States "persons" are defined to include, in addition to citizens, U.S. lawful permanent residents, persons within the United States, employees and contractors of the U.S. government, companies composed principally of U.S. citizens or residents, or a corporation organized under the law of a U.S. state (or the foreign subsidiary of a U.S. corporation).  18 U.S.C. § 3077(2).  As a Swedish citizen and corporation, neither Henriksson nor Swedbank qualifies.

[11]   *See* 18 U.S.C. § 1957(a) (requiring transaction to be "derived from specific unlawful activity"); 18 U.S.C. § 1956(a)(1)(A)(i) (requiring that the defendant have "intent to promote the carrying on of specified unlawful activity"); 18 U.S.C. § 1956(a)(2)(A) (same); 18 U.S.C. § 1956(a)(2)(B)(i) (requiring transaction to be designed "to conceal . . . the proceeds of specific unlawful activity); 18 U.S.C. § 1956(a)(2)(B)(i) (same).

2187069, at *9 (S.D.N.Y. Sept. 29, 2004) ("[I]n the absence of allegations concerning a 'specified unlawful activity,' no claim for money laundering may withstand a motion to dismiss.").

*Third*, the Complaint does not plead any facts regarding Swedbank or Henriksson's mental states, and thus cannot establish either acted with the *mens rea* required to be culpable for the alleged money laundering offenses. *See also, e.g.*, *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 430 (S.D.N.Y. 2007) (money laundering requires "intent on the part of the defendant, an element analyzed using the . . . motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness standard") (quotation marks omitted).[12]

### (f)      *Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(h))*

Having failed to adequately plead a substantive violation of 18 U.S.C. §§ 1956 or 1957, Plaintiffs cannot establish that Swedbank or Henriksson conspired to violate either provision. *See, e.g.*, *Terminate Control*, 28 F.3d at 1343-44.

### (g)      *Hobbs Act Violation (18 U.S.C. § 1951(a))*

Under the Hobbs Act, it is unlawful for someone to "obstruct[], delay[], or affect[]," interstate commerce through robbery or extortion." *See* 18 U.S.C. § 1951(a). Both "robbery" and "extortion" are defined to require "the unlawful taking or obtaining of personal property" by use of force or threatened force. 18 U.S.C. § 1951(b)(2). The Complaint does not adequately plead Hobbs Act violations committed by Swedbank or Henriksson because, as a threshold matter, it fails to specify the property that they unlawfully "obtained" (or even sought to obtain) from

---

[12]  *See* 18 U.S.C. § 1956(a) (requiring that the defendant "know[]" that the "financial transaction represents the proceeds of some form of unlawful activity"); 18 U.S.C. 1956(a)(1)(A)(i) (requiring the defendant act "with the intent to promote the carrying on of specified unlawful activity"); 18 U.S.C. § 1956(a)(1)(B)(i) (requiring that defendant "know[] . . . that the transaction is designed in whole or in part . . .  to conceal or disguise the nature, location, the source, the ownership, or the control of the proceeds"); 18 U.S.C. § 1957(a) (requiring that the defendant "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property");

Plaintiffs through extortion or robbery. *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404 (2003); *see also Mackin v. Auberger*, 59 F. Supp. 3d 528, 550 (W.D.N.Y. 2014) (dismissing extortion claim that "fail[ed] to identify any property allegedly obtained from the [plaintiff] officers"). The Complaint also fails to identify any instance in which Swedbank or Henriksson used or threatened force against Plaintiffs or otherwise coerced them to relinquish property. This is independently fatal to their Hobbs Act claim. *See, e.g.*, *Huntemann v. City of Yonkers*, 1997 WL 527880, at *15 (S.D.N.Y. Aug. 25, 1997) (dismissing RICO claim based on Hobbs Act violation when there was no allegation of "wrongful use of actual or threatened force, violence, or fear") (quotation marks omitted).

### 2.  The Complaint Does Not Adequately Plead A "Pattern" Of Racketeering Activity

As the Complaint alleges no predicate acts with sufficient particularity, it falls at least two acts short of establishing a "pattern." 18 U.S.C. § 1961(1). But even if it had, "two acts will not always suffice." *Ramiro Aviles v. S&P Global, Inc.*, 380 F. Supp. 3d 221, 268 (S.D.N.Y. 2019). Among other things, a RICO plaintiff must also show that the predicate acts "amount to or pose a risk of continued criminal activity," and courts in this Circuit have routinely held that schemes directed against a limited number of victims that are inherently terminable in nature fail to satisfy the RICO continuity requirement. *See, e.g.*, *id.* at 268-69 ("efforts of a single group of actors to execute a one-time scheme against a single set of victims through a single means" failed to state a RICO pattern); *Rivera*, 2005 WL 1514043, at *4 ("A RICO claim will typically fail when it relies upon a defendant's narrowly directed actions toward a single fraudulent end with a limited goal . . . . ."); *Pohlot*, 664 F. Supp. at 118 (conspiracy to murder a single person did not establish a "continuing or ongoing threat of criminal activity" for RICO purposes).

The "Enterprise" in this case is alleged to have the sole purpose of "destroying Carlström" and his companies, Compl. ¶ 278, and that this purpose was achieved by no later than May 2019. *Id.* ¶ 254 ("Carlström had lost all of his companies, employees, clients, houses, friends, relatives, home country, and, with their departure, his wife and his two children, too."). Plaintiffs do not allege that the Enterprise poses a threat of "continued criminal activity" to any other party. Under analogous factual circumstances, courts have found that the "continuity" element has not been met. *See, e.g.*, *Gross v. Waywell*, 628 F. Supp. 2d 475, 494 (S.D.N.Y. 2009) ("[C]ourts in this Circuit have held repeatedly that allegations of RICO violations involving . . . a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property—as opposed to complex, multi-faceted schemes—are generally insufficient to demonstrate closed-ended continuity . . . .") (collecting cases); *GICC Cap. v. Tech. Fin. Grp.*, 67 F.3d 463, 466 (S.D.N.Y. 1995) ("It defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot."); *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 611 (S.D.N.Y. 2015) ("[W]here an ongoing threat is not implied, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.") (quotation marks omitted).

      3.    <u>Plaintiffs Have Failed To Plead The Existence of A RICO Enterprise</u>

To adequately plead an "association-in-fact" enterprise, as Plaintiffs attempt to do here, a complaint must allege "solid information regarding the hierarchy, organization, and activities of the alleged enterprise, . . . from which [a court] could fairly conclude that its members functioned as a unit." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004). The Complaint's threadbare allegations do not meet this standard.

Plaintiffs allege that Defendants operated a vast criminal enterprise comprised of the bedrocks of the Swedish financial system, but do not offer any allegations regarding how any of the Defendants coordinated their illicit activities or how the enterprise was run.   While the Complaint includes the conclusory allegation that the enterprise was "organized and managed by Henriksson," Compl. ¶ 26, it "does not contain any allegations of specific actions [Henriksson] took or explain why he should be characterized as a ringleader."   *Beter v. Murdoch*, 2018 WL 3323162, at *6 (S.D.N.Y. June 22, 2018).   Nor does it explain how he exercised "manage[ment]" authority over private or governmental institutions with which he had no affiliation.   *See, e.g.*, *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 301 (E.D.N.Y. 2017) (plaintiff failed to allege a RICO enterprise where the complaint did not show how defendants "coordinat[ed] their activities so as to advance a collective goal"); *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) ("They fail to make any concrete factual assertions as to the mechanics of the interactions among defendants, including facts indicating that the disparate defendants functioned as a unit, or supporting the inference that defendants had a common interest in the success of the so-called enterprise."); *Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802, at *4 (E.D.N.Y. Jan. 4, 2017) (similar).

And while the Complaint includes the conclusory allegation that the enterprise was formed "in or about 2015," it does not reveal the "facts specifying how the[] [alleged enterprise] members joined together as a group to achieve their purposes."   *See, e.g.*, *Propst v. Ass'n of Flight Attendants*, 546 F. Supp. 2d 14, 25 (E.D.N.Y. 2008), *aff'd*, 330 F. App'x 304 (2d Cir. 2009) (dismissing RICO claims due to failure to adequately plead an enterprise); *see also Moll v. US Life Title Ins. Co. of New York*, 654 F. Supp. 1012, 1032 (S.D.N.Y. 1987) (same).

### C.     The Complaint Fails To State A RICO Conspiracy Claim

Because Plaintiffs have failed to adequately plead a violation of Section 1962(c), "the associated conspiracy claim under Section 1962(d) must be dismissed as well." *Worldwide*, 2016 WL 1298987, at \*12.   And Plaintiffs' conspiracy claim is independently subject to dismissal because the Complaint fails to allege "the existence of an agreement" to commit the predicate acts. *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, 277 F. Supp. 3d 521, 579 (S.D.N.Y. 2017).   Plaintiffs rote allegation that "on or about 2015 . . .  each Defendant agreed that a conspirator would commit at least two acts," Compl. ¶¶ 288-89, provides none of the requisite factual specification from which Swedbank and Henriksson's participation in such an agreement could be inferred.   *See, e.g.*, *Nat'l Grp. for Comm. & Comp. Ltd. v. Lucent Tech, Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y 2006) (dismissing conspiracy claim where "defendant [did] not alleg[e] facts implying any agreement"); *Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603496, at \*6 (S.D.N.Y. Sept. 30 1997) (same).   And in fact, other allegations in the Complaint directly contradict that inference.   Swedbank is not alleged to have interacted with Plaintiffs until **2018**, and at that time, it was in the context of a potential business deal with **Carlström**—not an agreement with the other Defendants to commit racketeering.   Compl. ¶¶ 172-181.

## III.     THE COMPLAINT FAILS TO STATE A CFAA CLAIM

The alleged factual support for Plaintiffs' CFAA claim is confined to three sentences of the Complaint.   *See* Compl. ¶ 266.   Those allegations are insufficient for a basic reason.   "The CFAA creates a cause of action against a person who 'intentionally accesses a computer without authorization,'" *TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, 2020 WL 1322872, at \*5 (S.D.N.Y. Mar. 20, 2020) (quoting 18 U.S.C. § 1030(a)(2)), and Plaintiffs offer no facts to support the inference that Swedbank or Henriksson ever accessed Carlström's computer.   Plaintiffs simply

allege that some unidentified person broke into Carlström's computer in May 2019—and that "[t]he origin of the intrusion was traced to Istanbul, Turkey," not Sweden.  Compl. ¶ 266.[13]

## IV.  THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' PENDENT CLAIMS

Because the Complaint does not allege original or diversity jurisdiction, if the claims resting on federal question jurisdiction are dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' pendent claims—which involve questions of Swedish law.  *See, e.g.*, *Klein & Co. Futures, Inc. v. Board of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction . . . ."); *Worldwide*, 2016 WL 1298987, at *9 (denying supplemental jurisdiction where court dismissed RICO claims).[14]

## V.  THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION BASED ON *FORUM NON CONVENIENS*

Even if the Court had jurisdiction over Swedbank and Henriksson and Plaintiffs' claims were otherwise not subject to dismissal, the Court should decline to hear this case based on the doctrine of *forum non conveniens*.  Courts in this Circuit are guided by a three-step process in exercising their discretion.  "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum . . . .  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute . . . .  Finally, at step three, a court balances the private and public interests implicated in the choice of forum."

---

[13]   Plaintiffs have also failed to allege that Carlström suffered "damage" as a result of a violation of 18 U.S.C. § 1030(5)(B).  Under the statute, "damage" means "impairment to the integrity or availability of data, a program, a system, or information," and is distinct from "loss," which encompasses the sort of consequential damages Carlström purports to have suffered in the Complaint.  *Compare* 18 U.S.C. §§ 1030(e)(8) and (11), *with* Compl ¶ 266.

[14]   The common law claims are independently subject to dismissal under Rule 12(b)(6) for the reasons stated in Folksam's brief.  *See* Folksam Br. at 19-20.

*Norex Petroleum Ltd. av. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).  Here, each step weighs strongly in favor of the Court declining to exercise jurisdiction so that the case can be heard in Sweden, where virtually all of the relevant parties, evidence, and witnesses can be found.

### A.     Plaintiffs' Choice Of Forum Is Not Entitled To Deference

Plaintiffs' choice to file the case in this District should not be entitled to deference.  All of the parties, with the exception of Brune, are Swedish companies or citizens.  Compl. ¶¶ 6-20. While Carlström alleges that he now lives in the United States pending his claim for asylum, he does not allege that he resides in New York.  *Id.* ¶ 21.  The remaining five Plaintiffs have no alleged connection to the United States.  *Id.* ¶¶ 8-12; *see, e.g.*, *Wilson v. ImageSat Intern. N.V.*, 2008 WL 2851511, at *5 (S.D.N.Y. July 22, 2008) (granting limited deference to plaintiffs' choice of forum where only "half of the plaintiffs [were] American or connected to United States citizens and entities").

By contrast, all seven Defendants are Swedish and virtually all of the relevant events alleged in the Complaint took place in Sweden.  As a result, the evidence and witnesses in this case are overwhelmingly located abroad.  *See* Frisk Decl. ¶¶  1-4; *see also Norex*, 416 F.3d at 155 (recognizing "the availability of witnesses or evidence in the forum district" as key factor in determining whether to defer to plaintiff's choice of forum).[15]

---

[15]   Despite the inconvenience of this forum, it provides one key advantage to Plaintiffs:  the availability of RICO treble damages.  But the deference afforded a plaintiff's choice of forum "decreases the more the choice appears motivate by forum shopping," and especially so here, given the extent to which Plaintiffs'' claims are based on alleged conduct with no connection to New York.  *Lfoundry Rousset SAS v. Amtel*, 2015 WL 4461617, at * 4 (S.D.N.Y. July 21, 2015) (refusing to credit plaintiff's choice of forum where plaintiff brought suit in the United States "to take advantage of the RICO statute and its treble damages provision").

### B.    Sweden Provides An Adequate Alternative Forum

Sweden provides an acceptable alternative forum here because Defendants, Swedbank and Henriksson among them, "are amenable to service of process there, and [Sweden] permits litigation of the subject matter of [this] dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003). Though masqueraded as a RICO claim, Plaintiffs' allegations arise from a run-of-the-mill commercial dispute between Carlström and his companies, on the one hand, and Defendants (principally Folksam), on the other. This matter is thus squarely within the core competence of the Swedish courts. *See, e.g.*, *Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 385 (S.D.N.Y. 2009) (recognizing Sweden as an adequate alternative forum for the resolution of business disputes involving Swedish parties).

### C.    The Private And Public Interest Factors Weigh In Favor Of Dismissal

The private and public interest factors also favor dismissal. In assessing the private interest factors, "the court is necessarily engaged in a comparison between the hardships [the] defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as a result of dismissal." *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001). Where, as here, the plaintiff's choice of forum is entitled to a "lesser degree of deference," his private interests are commensurately less likely to prevail. *Id*. And as explained above, New York is not a convenient forum for Plaintiffs—most of them have no connection to it. Given that nearly all of the parties are Swedish and the vast majority of the evidence is located in Sweden, there will be no genuine inconvenience to Plaintiffs as a result of requiring them to litigate this dispute in Sweden. Conversely, litigating what is essentially a Swedish business dispute in the United States would pose a severe inconvenience for Defendants, all of whom are in Sweden. Compl. ¶¶ 13-19; *see also* Frisk Decl. ¶¶ 1-5.

Retaining jurisdiction over this case would also needlessly burden the U.S. court system while depriving Swedish courts an opportunity to resolve a dispute in which they have a more compelling interest. Since nearly all of the parties are Swedish and the alleged conduct occurred in Sweden, New York has minimal interest in adjudicating this case. *See, e.g.*, *Online Payment*, 638 F. Supp. 2d at 391-92 (U.S. court had no interest in resolving a dispute based on events that largely occurred in Sweden and England). By contrast, given that Plaintiffs have made serious allegations against Swedbank and Folksam, one of Sweden's largest banks and one of its largest insurance companies, as well at two of Sweden's own governmental regulators, Swedish courts have a strong interest in hearing this case. *See, e.g.*, *id.* at 392 ("Given that Svenska is one of the largest banks in Sweden, . . . Sweden has a strong interest in ensuring that such a large entity is not engaged in . . . the types of acts alleged here."). Moreover, Plaintiffs' pendent claims will likely involve questions of Swedish law, and courts should "consider the problems of applying foreign law" in assessing balance of public interest. *Id.* at 393.

## VI.  THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE

The Court should dismiss the Complaint with prejudice because "repleading would be futile." *West 79th Street*, 2004 WL 2187069, at *16. The Complaint suffers from the kinds of fundamental weaknesses that warrant a final dismissal. *See, e.g.*, *id.* (denying leave to replead where plaintiff's RICO claim "suffer[ed] from substantive and not mere technical deficiencies"); *In re SSA Bonds* Antitrust *Litig.*, 420 F. Supp. 3d 219, 242 (S.D.N.Y. 2019) (dismissing a claim for lack of personal jurisdiction "with prejudice," even when the plaintiff sought jurisdictional discovery); *Stair v. Calhoun*, 2009 WL 792189, at *7 (E.D.N.Y. Mar. 23, 2009) (similar).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint against Swedbank and Henriksson should be dismissed in its entirety with prejudice.

Dated:  June 26, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP

_____
William A. Burck
Christopher D. Kercher
Nicholas Hoy
Jared E. Ruocco
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendants Swedbank AB (publ) &
Jens Henriksson*