**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| VICTOR CARLSTRÖM, STEPHEN BRUNE, VINACOSSA ENTERPRISES AB, VINACOSSA ENTERPRISES LTD, BOFLEXIBILITET SVERIGE AB, SBS RESURS DIREKT AB and SPARFLEX AB,<br><br><div align="right">Plaintiffs,</div><br>vs.<br><br>FOLKSAM ÖMSESIDIG LIVFÖRSÄKRING, SWEDBANK AB, SKATTEVERKET, FINANSINSPEKTIONEN, JENS HENRIKSSON, ERIK THEDÉEN, KATRIN WESTLING PALM, and others known and unknown,<br><br><div align="right">Defendants.</div> | 19-cv-11569 (DLC) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT FOLKSAM ÖMSESIDIG LIVFÖRSÄKRING'S**
**MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS .................................................................................................3

ARGUMENT .................................................................................................................8

I.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL
JURISDICTION. .......................................................................................................8

    A.  Plaintiffs Have Not Shown General Jurisdiction over Folksam. .............................9

    B.  Plaintiffs Have Not Shown Specific Jurisdiction over Folksam.............................9

II.  PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED. ...........................................13

    A.  Plaintiffs Lack Standing Because They Have Not Pled U.S. Injuries that
Are Actionable Under RICO. ..............................................................................14

    B.  Plaintiffs Have Not Pled U.S. Conduct that Is Actionable Under RICO..............15

III.  CARLSTRÖM'S CFAA CLAIM SHOULD BE DISMISSED. .......................................18

IV.  PLAINTIFFS' COMMON LAW CLAIMS SHOULD BE DISMISSED........................19

V.  THE COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF
*FORUM NON CONVENIENS.* ..................................................................................20

    A.  Plaintiffs' Choice of Forum Deserves Little Deference. .....................................21

    B.  Sweden Is an Adequate Alternative Forum. ........................................................23

    C.  Relevant Private Interests Strongly Favor Adjudication in Sweden.....................23

    D.  Relevant Public Interests Strongly Favor Adjudication in Sweden......................24

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmTrust Fin. Servs., Inc. v. Lacchini*,
  260 F. Supp. 3d 316 (S.D.N.Y. 2017)........................................................................................9

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
  480 U.S. 102 (1987)................................................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................8, 12, 13

*Bascuñán v. Elsaca*,
  927 F.3d 108 (2d Cir. 2019)..............................................................................................16, 18

*Blimpie Int'l, Inc. v. ICA Menyforetagen AB*,
  No. 96 CIV. 3082 (RWS), 1997 WL 143907 (S.D.N.Y. Mar. 25, 1997) ...............................23

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018)........................................................................................................8

*Crawford v. Franklin Credit Mgmt. Corp.*,
  758 F.3d 473 (2d Cir. 2014)....................................................................................................18

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..................................................................................................................9

*Doe v. Hyland Therapeutics Div.*,
  807 F. Supp. 1117 (S.D.N.Y. 1992)........................................................................................23

*Empire Merchants, LLC v. Reliable Churchill LLP*,
  16-CV-5226 (ARR) (LB), 2017 WL 7512900 (E.D.N.Y. Jan. 30, 2017) ...............................19

*European Cmty. v. RJR Nabisco, Inc.*,
  764 F.3d 129 (2d Cir. 2014)..............................................................................................17, 18

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)....................................................................................................19

*Giraldo v. Kessler*,
  694 F.3d 161 (2d Cir. 2012)....................................................................................................25

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947)................................................................................................................24

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992).................................................................................................15, 19

*In re Alcon S'holder Litig.*,
    719 F. Supp. 2d 263 (S.D.N.Y. 2010)..................................................................................24

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001)..................................................................................................24

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011).........................................................................................10, 11, 12

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d 413 (N.Y. 1996) ................................................................................................20

*Manson v. Stacescu*,
    11 F.3d 1127 (2d Cir. 1993)..........................................................................................15, 19

*Mariani v. Consol. Edison Co. of New York*,
    982 F. Supp. 267 (S.D.N.Y. 1997) .....................................................................................20

*Mayer v. Time, Inc.*,
    17cv5613(DLC), 2018 WL 1738322 (S.D.N.Y. Apr. 9, 2018) ..........................................21

*Meserole v. Sony Corp. of Am.*,
    No. 08 CV. 8987, 2009 WL 1403933 (S.D.N.Y. May 19, 2009) ........................................20

*Motorola Credit Corp. v. Uzan*,
    322 F.3d 130 (2d Cir. 2003)..............................................................................................15

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005)........................................................................................21, 23

*Online Payment Sols. Inc. v. Svenska Handelsbanken AB*,
    638 F. Supp. 2d 375 (S.D.N.Y. 2009)..................................................................................23

*Phillips v. Reed Grp., Ltd.*,
    955 F. Supp. 2d 201 (S.D.N.Y. 2013)....................................................................................8

*Pincione v. D'Alfonso*,
    506 F. App'x 22 (2d Cir. 2012) ............................................................................................9

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)..............................................................................................................23

*RJR Nabisco, Inc. v. European Cmty.*,
    136 S. Ct. 2090 (2016).....................................................................................................14, 16

*Sanchez v. ASA Coll., Inc.*,
  No. 14-CV-5006 JMF, 2015 WL 3540836 (S.D.N.Y. June 5, 2015) .....................................18

*Snöfrost AB v. Håkansson*,
  353 F. Supp. 3d 99 (D. Mass. 2018) ...........................................................................................23

*Spencer Stuart Human Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition*
  *Corp.*, 17cv2195(DLC), 2017 WL 4570791 (S.D.N.Y. Oct. 12, 2017) ..................................21

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs.*,
  421 F. Supp. 2d 741 (S.D.N.Y. 2006)..........................................................................................24

*Ullmannglass v. Oneida, Ltd.*,
  927 N.Y.S.2d 702 (N.Y. App. Div. 2011) ...................................................................................20

*United States v. All Assets Held at Bank Julius*,
  251 F. Supp. 3d 82 (D.D.C. 2017) ..............................................................................................17

*United States v. Bruno*,
  383 F.3d 65 (2d Cir. 2004)...................................................................................................12, 17

*Volmar Distributors, Inc. v. New York Post Co.*,
  825 F. Supp. 1153 (S.D.N.Y. 1993)............................................................................................16

*Walden v. Fiore*,
  571 U.S. 277 (2014)...............................................................................................................10, 11

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016).........................................................................................................10

*Walton v. Walker*,
  No. 08-cv-486-MJR, 2009 WL 1470409 (S.D. Ill. May 27, 2009) ...........................................13

*Westchester Cty. Indep. Party v. Astorino*,
  137 F. Supp. 3d 586 (S.D.N.Y. 2015).........................................................................................15

*Wilson v. ImageSat Int'l N.V.*,
  No. Civ. 6176(DLC), 2008 WL 2851511 (S.D.N.Y. July 22, 2008)..............................22, 24

**Statutes & Rules**

18 U.S.C. § 1030...........................................................................................................................18, 19

18 U.S.C. § 1341...............................................................................................................................16

18 U.S.C. § 1343...............................................................................................................................16

18 U.S.C. § 1349...............................................................................................................................16

18 U.S.C. § 1951 ...................................................................................................17

18 U.S.C. § 1952 ...................................................................................................17

18 U.S.C. § 1956 ...................................................................................................17

18 U.S.C. § 1957 ...................................................................................................17

18 U.S.C. § 1961 ...................................................................................................16

18 U.S.C. § 1962 ...................................................................................13, 16, 18

18 U.S.C. § 1964 ...................................................................................14, 15

18 U.S.C. § 1965 ...................................................................................................9

28 U.S.C. § 1367 ...................................................................................................19

N.Y. C.P.L.R. § 302(a) .........................................................................................9

Fed. R. Civ. P. 4 ...................................................................................................9

Fed. R. Civ. P. 12 ...................................................................................... passim

In their Verified Complaint and Jury Demand ("Complaint"), the above-captioned plaintiffs ("Plaintiffs") allege claims against the above-captioned Swedish defendants ("Defendants"), including Folksam ömsesidig livförsäkring ("Folksam"), under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Computer Fraud and Abuse Act ("CFAA"), and New York common law.  Folksam hereby moves to dismiss the claims against it with prejudice, pursuant to F.R.C.P. 12(b)(1), 12(b)(2), and 12(b)(6), as well as the doctrine of *forum non conveniens*.

## PRELIMINARY STATEMENT

This case arises from an alleged commercial dispute between Swedish citizens over conduct that occurred in Sweden.  That dispute does not belong in this Court: the Complaint fails to allege a well-pled basis for either personal jurisdiction over Folksam in the United States or liability for any of the spurious claims asserted against Folksam, and does not justify adjudication of any of these issues in the United States, rather than Sweden.  Accordingly, the claims against Folksam should be dismissed in their entirety, with prejudice.

The Complaint alleges as follows:[1]  Victor Carlström, a Swedish financial broker and principal Plaintiff, had a contract to provide financial services to one of Sweden's largest insurance companies, Folksam.  After Carlström was asked to reduce his investments with Folksam, he allegedly began investigating Folksam's operations.  He supposedly discovered that Folksam and the six other Swedish Defendants were connected to certain alleged criminal conduct—all based in Europe and Asia (and not in the United States).  Carlström reported his findings to Folksam, which then terminated its contract with him.  And then, according to

---

[1] Folksam strongly disputes the Complaint's allegations and claims against it, including the allegations recounted here and throughout this brief.  But, as is required on a motion to dismiss, and solely for purposes thereof, Folksam recounts the allegations as pled.

Carlström, Folksam, along with the other Defendants, proceeded to take alleged actions in violation of Swedish financial laws to ruin Carlström's and his companies' business opportunities in Sweden.

Facing investigations by the Swedish tax authorities, Carlström left Sweden and eventually came to the United States. There, the Complaint alleges, someone tried to open the door to one of his hotel rooms, and others watched or followed him. The Complaint does not allege any facts, at all, connecting any of those unnamed individuals to any Defendant. But the Complaint theorizes in dramatic and conclusory fashion that those individuals were "assassins" sent by the Defendants (including two financial agencies of the Swedish government) to kill Carlström.

Despite the lack of any connection between Folksam and the United States, Plaintiffs try to bring this Swedish dispute before this Court by asserting broad and unsupported claims under RICO and the CFAA—federal claims to which they have appended common law claims for breach of contract, tortious interference, and intentional infliction of emotional distress. But the fundamentally Swedish nature of the dispute, along with fundamental pleading defects, require the dismissal of all of Plaintiffs' claims against Folksam, with prejudice, on several grounds.

*First*, this Court lacks personal jurisdiction over Folksam. Not only is Folksam a Swedish life insurance company whose insurance business is confined to Sweden, and which does not have a physical presence anywhere in the United States, but Plaintiffs fail to allege well-pled facts showing that Folksam did *anything* in the United States that gives rise to their claims. *Second*, Plaintiffs have failed to state RICO claims upon which relief can be granted. Plaintiffs lack statutory standing because they have not alleged U.S. injuries to business or

property that are actionable under RICO—*even if* the supposed murder conspiracy were plausibly alleged (which it is not).  And they have not plausibly alleged that any Defendant engaged in any actionable racketeering activity under RICO.  *Third*, the CFAA claim fails because Plaintiffs allege no facts to suggest that any Defendant improperly accessed any computer—the only allegedly improper computer use they allege occurred in Turkey and Cyprus, outside the territorial scope of the CFAA, and Plaintiffs do not plead that any Defendant was involved.  *Fourth*, the common law claims lack a basis for subject matter jurisdiction, and are not claims upon which relief can be granted because they are inadequately pled and untimely.  And *fifth*, the Complaint should be dismissed entirely under the doctrine of *forum non conveniens*.  The principal Plaintiff and all Defendants are Swedish, and almost all relevant witnesses and documents are in Sweden.  Sweden has a compelling interest in adjudicating claims about alleged conduct in Sweden (including allegations made against Swedish government agencies) that seek billions in damages from the Swedish government as well as companies that serve millions of Swedish citizens; the United States has none.  Folksam respectfully seeks dismissal of all claims against it with prejudice.

## STATEMENT OF FACTS

### A.    The Parties.

Plaintiff Victor Carlström is a Swedish citizen who lived in Sweden until January 2019.  (Compl. ¶¶ 6, 218.)  Carlström is a licensed financial broker in Sweden, where he operated as a fund manager and financial advisor.  (*Id.* ¶¶ 21, 218.)  Carlström did business through four companies domiciled in Sweden: Plaintiffs SBS Resurs Direkt, AB ("Resurs Direkt"), Sparflex, AB ("Sparflex"), Boflexibilitet Sverige, AB ("Boflex") and Vinacossa Enterprises, AB.  (*Id.* ¶¶ 8, 10-12.)  He also did business through a company domiciled in Cyprus: Plaintiff Vinacossa Enterprises, Ltd.  (*Id.* ¶ 9.)  The last Plaintiff is Stephen Brune, a

New York resident who agreed to do business with Carlström.  (*Id.* ¶¶ 7, 126.)

Defendants are all entities and individuals domiciled in Sweden.  (*Id.* ¶¶ 13-19.)  Folksam is an insurance and occupational pensions company incorporated and headquartered in Sweden.  (Declaration of Anders Andersson, dated June 23, 2020 ("Andersson Decl."), ¶¶ 1, 4.)  All of Folksam's employees, insurance customers, and insurance activities are in Sweden.  (*Id.* ¶¶ 5, 7, 10.)  Folksam insures a large proportion of Sweden's population, and is owned by its Swedish customers.  (*Id.* ¶¶ 4, 6.)  The Complaint does not allege that Folksam has ever done continuous or systematic business in the United States.  (*See id.* ¶ 10.)

Defendant Swedbank AB ("Swedbank") is a bank incorporated and headquartered in Sweden that serves Sweden's population.  (Compl. ¶ 14.)  Defendant Jens Henriksson is the current Director General of Swedbank.  (*Id.* ¶¶ 17, 23 & n.4, 86.)  He was the CEO of Folksam from 2013 to August 2019, when he moved to Swedbank.  (*Id.*)  Defendant Finansinspektionen (translated as "Swedish Financial Supervisory Authority") is an agency of the Swedish government that licenses and monitors companies operating in the Swedish financial markets.  (*See id.* ¶ 16.)  Defendant Erik Thedéen is the Swedish Financial Supervisory Authority's current Director General.  (*Id.* ¶¶ 18, 89.)  Defendant Skatteverket (translated as "Swedish Tax Agency") is an agency of the Swedish government that manages the civil registration of private individuals and collects taxes such as personal income, corporate, and excise taxes.  (*See id.* ¶ 15.)  The last Defendant, Katrin Westling Palm, is the current Director General of the Swedish Tax Agency.  (*Id.* ¶¶ 19, 143.)

**B.    Resurs Direkt's Alleged Contract with Folksam.**

In June 2013, Resurs Direkt (through Carlström) allegedly entered into a contract with Folksam whereby it "agreed to invest its clients' funds under Folksam's [financial] license".  (*Id.* ¶¶ 28-29.)  Carlström, in turn, invested funds through Folksam in BlackRock BGF High

Yield Bond A2 USD, and BlackRock invested the funds in New York accounts.  (*Id.* ¶ 30.)

In 2014, Folksam allegedly instructed Carlström to decrease Resurs Direkt's investment of funds with Folksam.  (*Id.* ¶ 36.)  In response, Carlström allegedly began investigating Folksam's operations.  (*Id.* ¶¶ 36-38.)  In the course of that and subsequent alleged investigations, Carlström allegedly discovered criminal conduct in Sweden, Europe, and Asia to which he connected Folksam and certain other Defendants.  (*Id.* ¶¶ 39-67, 182, 191-216, 230, 238.)  The Complaint does not allege that any of the conduct Carlström investigated had any connection to the U.S.  Carlström allegedly told Folksam about his findings by 2015.  (*Id.* ¶ 70.)

**C.  The Alleged "Racketeering Enterprise" that Began in September 2015.**

In September 2015, Folksam allegedly terminated Resurs Direkt's contract and failed to pay Resurs Direkt and Carlström $12 million in commissions that they were allegedly due because of the BlackRock investment.  (*Id.* ¶¶ 35, 72.)  After terminating Resurs Direkt's contract, the Complaint asserts, Jens Henriksson (then Folksam's CEO) allegedly began a "racketeering enterprise" consisting of the Defendants and several other individuals.  (*Id.* ¶ 23.)  This "racketeering enterprise" allegedly set out to ruin Carlström's business opportunities in Sweden.  (*Id.* ¶ 25.)  However, the Complaint fails to include any non-conclusory allegation that any of the Defendants, all of whom are alleged members of the alleged "racketeering enterprise," had any agreement with one another regarding Carlström or the other Plaintiffs.

**D.  The Alleged Interference with Resurs Direkt's Business in Sweden.**

After Folksam terminated its agreement in September 2015, Resurs Direkt allegedly met with over 1,000 clients whose funds were maintained with Folksam (none of whom were alleged to be in the U.S.) and convinced them that they should move their funds to a nonparty Swedish company called Nord Fondkomission AB ("Nord"), with which Resurs Direkt had an agreement.  (*Id.* ¶¶ 92-93, 96, 98.)  In response, Folksam allegedly told those clients that

Carlström was a "fraud and a cheat," refused to transfer the funds to Nord, and threatened to have the Swedish Financial Supervisory Authority investigate Nord—allegedly violating Swedish financial law.  (*Id.* ¶¶ 97, 100-03, 105-07.)  After investigations by the Swedish Financial Supervisory Authority, Nord canceled its agreements with Carlström and his companies in August 2016.  (*Id.* ¶¶ 118, 124.)

       **E.**      **The Alleged Interference with Sparflex's Business in Sweden.**

       In November 2016, Carlström allegedly flew to New York City to meet with Brune.  (*Id.* ¶ 126.)  They allegedly agreed to enter the mortgage business "in Sweden and later in the United States" using companies that Carlström would create in Sweden (Sparflex and Boflex).  (*Id.*)  As a first step in this process, Carlström formed the company Sparflex in Sweden, and Sparflex signed an agreement with the nonparty Swedish company Exceed Capital AB ("Exceed") whereby Exceed would manage the funds of Sparflex's clients.  (*Id.* ¶¶ 130, 134.)  In 2017, Carlström allegedly persuaded "nearly 500 clients" with funds at Folksam to move their funds to Exceed.  (*Id.* ¶ 140.)  When those clients executed documentation instructing Folksam to move the funds, Folksam allegedly refused, asserted that Carlström was fraudulent, and allegedly pressured clients to cancel the transfers, all allegedly in violation of Swedish law.  (*Id.* ¶¶ 140-41, 154.)

       **F.**      **The Alleged Interference with Boflex's Business in Sweden.**

       In March 2018, Carlström allegedly formed the company Boflex in Sweden. (*Id.* ¶¶ 129, 155.)  Throughout the summer of 2018, Carlström allegedly met with bankers at Swedbank to negotiate a contract whereby Swedbank would provide mortgages to Sparflex's customers through Boflex.  (*Id.* ¶ 172.)  The Complaint alleges that after Boflex revealed its plans to the Swedish Financial Supervisory Authority, Swedbank pulled out of the negotiations and, in conversations with Carlström, compared Boflex to another fraudulent company.  (*Id.*

¶¶ 177, 179, 181.)  The Complaint alleges that the "only person who knew" about the negotiations and could have supplied Swedbank with that comparison was an official at the Swedish Financial Supervisory Authority.  (*Id.* ¶¶ 176, 180.)

### G. Swedbank's Alleged Communications with New York's Department of Financial Services in 2016 and 2018.

The Complaint alleges that in 2016 and 2018, Swedbank made false representations to New York's Department of Financial Services about transactions with Mossack Fonseca, a Panamanian law firm involved in a "money laundering scheme".  (*Id.* ¶ 183-84, 188.)  The Complaint does not allege that Folksam knew about, much less participated in, those communications.  The Complaint also does not connect the alleged communications to any other events in the Complaint or allege that the communications injured or had anything to do with any Plaintiff.

### H. The Alleged Email Account Intrusion in Turkey and Cyprus.

In January 2019, Carlström left Sweden and spent time abroad before arriving in the U.S. in April 2019.  (*Id.* ¶¶ 223, 225, 242.)  The Complaint alleges that not long afterwards, there was "an intrusion into the email account of one of his Cyprus companies" that was "traced to Istanbul, Turkey."  (*Id.* ¶ 266.)  The intrusion allegedly required security enhancements that cost Carlström and his companies money.  (*Id.*)  This is the Complaint's only reference to alleged unauthorized computer usage, and no Defendant is alleged to have been involved.

### I. The Alleged Murder Conspiracy in New York and Los Angeles.

Starting in May 2019, Carlström allegedly had four encounters that the Complaint places under the heading "The Conspiracy to Murder Carlström In the U.S.":

- An individual tried to open the door to Carlström's hotel room in New York.[2]  (*Id.* ¶ 251.)

- An individual followed Carlström around a different New York hotel.  (*Id.* ¶¶ 259-60.)

- An individual at a Los Angeles hotel used his phone to photograph Carlström, while another "appeared to be monitoring Carlström".  (*Id.* ¶ 262.)

- At a different Los Angeles hotel, two men watched Carlström's room for 45 minutes.  (*Id.* ¶ 263.)  After Carlström boarded a shuttle to the airport, those men boarded the same shuttle without luggage, and Carlström fled the shuttle.  (*Id.* ¶¶ 264-65.)

The Complaint does not allege that any of those individuals threatened him with violence.  (*Id.* ¶¶ 278a, 280b, 282d.)  And aside from highly conclusory and unsupported claims that those encounters were somehow related to a conspiracy by the Defendants, the Complaint does not allege any facts connecting any of those unnamed individuals to any of the Defendants.

## ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

All of Plaintiffs' claims against Folksam should be dismissed under F.R.C.P. 12(b)(2) because Plaintiffs have not asserted well-pled facts that establish personal jurisdiction over Folksam.  In order to defeat a motion to dismiss for lack of personal jurisdiction, Plaintiffs must make a prima facie showing of personal jurisdiction for each claim they assert against each defendant.  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81, 83-84 (2d Cir. 2018). This showing must consist of alleged facts sufficient to establish jurisdiction that are well-pled— meaning they must be non-conclusory and plausible.  *See id.* at 81, 86; *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 231 (S.D.N.Y. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Where, as here, plaintiffs assert federal claims against a defendant that is not subject to personal

---

[2] Afterwards, Carlström was allegedly distressed and attempted suicide.  (Compl. ¶¶ 254-57.)

jurisdiction under any state long-arm or federal statute,[3] F.R.C.P. 4(k)(2) can authorize personal jurisdiction, but only to the extent consistent with the Fifth Amendment. *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 328 & n.5 (S.D.N.Y. 2017). But here, because Plaintiffs have not shown—and cannot show—that this Court's exercise of personal jurisdiction over Folksam would be constitutional, the claims against Folksam must be dismissed.

## A. Plaintiffs Have Not Shown General Jurisdiction over Folksam.

Under the Due Process Clause, general jurisdiction may only be exercised where a defendant has contacts in the forum "so continuous and systematic as to render it essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (internal punctuation omitted). Barring an "exceptional case," a corporate defendant only satisfies this test in the jurisdiction where it is incorporated and has its principal place of business. *Id.* at 139 n.19. Folksam does not meet that test. (*See* Andersson Decl. ¶ 10.) Folksam is incorporated and headquartered in Sweden. (*Id.* ¶ 1.) It does not have an office or employees in, or solicit or conduct any business in, the United States. (*Id.* ¶ 10.) All of its insurance business and all of the people it insures are in Sweden. (*Id.* ¶ 5.) Thus, there is no basis for exercising general jurisdiction over Folksam.

## B. Plaintiffs Have Not Shown Specific Jurisdiction over Folksam.

Under the Due Process Clause, specific jurisdiction may only be exercised over a defendant whose well-pled "suit-related conduct" created a "substantial connection with the

---

[3] This Court lacks a statutory basis for jurisdiction over Folksam under New York or federal law. Personal jurisdiction in New York is governed by C.P.L.R. Section 302(a). Subsections (1) and (2) only authorize jurisdiction over claims "arising from" transactions or tortious acts "within the state" and, as explained below, Plaintiffs' claims do not arise out of any well-pled connections between Defendants and the United States, let alone actions allegedly committed by Defendants in New York state. Subsection (3) does not apply because the Complaint does not plausibly suggest that Folksam "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state" or "should reasonably [have] expect[ed]" its alleged torts abroad to injure Plaintiffs in New York. Finally, federal law does not authorize jurisdiction over Folksam, which has no operations or business in any district of the United States. *See* 18 U.S.C. § 1965; *Pincione v. D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012); (Andersson Decl. ¶¶ 1, 5-7, 10).

forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  "Suit-related conduct" consists of "the conduct that could have subjected [the defendant] to liability" under each asserted claim.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016).  Furthermore, a "substantial connection with the forum" consists of a connection that is purposefully created by a defendant (rather than other parties or nonparties) with the forum itself (rather than people who reside there).  *Walden*, 571 U.S. at 284-85.  That means that a defendant's alleged torts outside the forum, even if allegedly intended to injure plaintiffs who reside in the forum, cannot confer jurisdiction unless those torts involve actual forum contacts like travel to or conduct within the forum.  *Id.* at 289.  And it also means that jurisdiction cannot be based on the forum contacts of an entity associated with a defendant, unless that defendant created a "purposeful" connection with the relevant forum through that entity and those contacts.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011); *id.* at 889 (Breyer, J., concurring).

Against that standard, Plaintiffs have failed to show specific jurisdiction for any claim they assert against Folksam.  They make several conclusory allegations that the Defendants "operated" as "an organized criminal group" in New York and committed various illegal acts in New York, such as conspiracy to murder, money laundering, and wire fraud—but all of those allegations are immaterial to the jurisdictional analysis because they are not only not well-pled, but are woefully inadequate.  (*E.g.*, Compl. ¶¶ 2, 277, 282, 288.)  Only four non-conclusory connections are alleged between *any* Defendant and the United States; none involves suit-related conduct creating a substantial connection between Folksam and the United States.

*First*, the Complaint alleges that in "late 2013 and early 2014, Carlström invested through Folksam . . . Resurs Direkt's clients' funds in" a BlackRock fund, and "[t]he BlackRock fund invested all the funds through its New York accounts."  (Compl. ¶ 30.)  Even if that were

10

true, that investment fails to confer personal jurisdiction for any of the claims against Folksam because it is unrelated to all of them.  That alleged investment is unrelated to the RICO claims for the simple reason that it occurred more than one year before the alleged "racketeering enterprise" began in September 2015.  (*Id.* ¶¶ 23, 72-74.)  Moreover, Plaintiffs allege no facts to suggest that either the alleged investment or the contract that allegedly empowered Resurs Direkt to make the investment was a violation of any predicate statute such that it would constitute racketeering activity supporting liability under RICO.[4]  Resurs Direkt's investment also fails to confer personal jurisdiction over Folksam because Folksam did not create the alleged contact with the United States—Resurs Direkt and BlackRock did.  Just because Folksam allegedly allowed Resurs Direkt to use its financial license for investment does not mean that Folksam itself purposefully directed funds at every forum that Resurs Direkt (and, further, BlackRock) might select for investment.  *See Nicastro*, 564 U.S. at 886 (holding that New Jersey courts lacked specific jurisdiction over a British manufacturer that hired a distributor to sell products in the United States because the manufacturer did not thereby engage in "conduct purposefully directed at New Jersey").

     *Second*, the Complaint alleges that Brune and Carlström were present in the U.S. while Defendants allegedly harmed their business associates abroad (*e.g.*, Compl. ¶¶ 126, 130, 140-42, 162, 170-71, 248), thereby causing them derivative injuries in the U.S.  But those alleged acts were all wholly extraterritorial and did not create any connection between Folksam and the U.S.  *See Walden*, 571 U.S. at 289 (rejecting personal jurisdiction in Nevada over a defendant who committed an intentional tort against plaintiffs in Georgia, knowing that they

---

[4] The investment is also *not* the alleged conduct by Folksam that gives rise to Resurs Direkt's contract claim. That conduct all allegedly happened in Sweden: Folksam allegedly breached, in Sweden, a contract formed in Sweden that required it to pay commissions to its Swedish counterparty, Resurs Direkt.  (Compl. ¶¶ 28, 72.)

would be injured by that tort in Nevada, because the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada").

*Third*, the Complaint alleges that Swedbank sent false communications to New York's Department of Financial Services. (Compl. ¶¶ 183-84, 188.) Folksam was not involved in any of those communications, and they cannot be imputed to Folksam on any basis, not least because the Complaint does not allege that Folksam had any knowledge of them—much less created a "purposeful" forum connection through them.[5] *See Nicastro*, 564 U.S. at 886.

*Fourth*, the Complaint insinuates that certain unnamed individuals Carlström allegedly encountered in the United States were "assassins" who had been dispatched to murder him. (*See* Compl. ¶¶ 26, 251, 280, 282.) But the Complaint's non-conclusory factual assertions fail plausibly to suggest that any of those individuals was connected in any way to Folksam. *See Iqbal*, 556 U.S. at 680 (explaining that if non-conclusory allegations are "not only compatible with, but indeed [are] more likely explained by, lawful" behavior, then unlawful behavior is not well-pled). The Complaint alleges that an unnamed individual tried to open the door in one of Carlström's hotel rooms, and that other unnamed individuals watched and followed him. Those allegations do *not* state that any of those individuals exhibited any connection to Folksam, or any Defendant. And those allegations do not state that any of those individuals did anything suggesting that they intended to harm Carlström. Taken together, those allegations fail to support the conclusion that those individuals were agents of any Defendant, or the conclusion

---

[5] The communications fail to confer personal jurisdiction for the additional reason that they are unrelated to any of Plaintiffs' claims against Folksam. For example, they are unrelated to the RICO claims because Plaintiffs do not allege that those communications had anything to do with the alleged enterprise organized to harm Plaintiffs, nor any alleged acts of racketeering. *See United States v. Bruno*, 383 F.3d 65, 84 (2d Cir. 2004) (explaining that a successful RICO claim "must show that the racketeering acts relate both to one another and . . . to the enterprise").

that they were "assassins" who intended to harm Carlström.[6]  Indeed, the "more likely"

conclusion is that those individuals were unaffiliated with the Defendants and not "assassins" at

all.  Thus, these allegations, too, fail to confer personal jurisdiction over Folksam.

Finally, Plaintiffs have not shown that exercising personal jurisdiction over

Folksam would comport with "traditional notions of fair play and substantial justice."[7]  *Asahi*

*Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113-16 (1987) (rejecting an exercise of

personal jurisdiction because of its "unreasonableness . . . apart from the question of" minimum

contacts).  For all the reasons stated herein, it would not.

## II.    PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED.

Plaintiffs assert substantive and conspiracy RICO claims against Folksam under

Sections 1962(c) and (d), respectively; both should be dismissed under F.R.C.P. 12(b)(6).

A complaint must allege facts sufficient to state a basis for relief under each claim

asserted, counting only the facts that are well-pled—meaning plausibly suggested by non-

conclusory allegations.  *See Iqbal*, 556 U.S. at 679-80.  Under this standard, Plaintiffs' RICO

claims must be dismissed for, at least, two independent reasons: (1) Plaintiffs lack statutory

standing because the Complaint does not allege that Plaintiffs suffered a U.S. injury that is

actionable under RICO; and (2) the Complaint does not plausibly allege that any Defendant

committed or agreed to commit the type of conduct in the United States necessary to violate the

---

[6] *See*, *e.g.*, *Walton v. Walker*, No. 08-cv-486-MJR, 2009 WL 1470409, at *2-4 (S.D. Ill. May 27, 2009)
(rejecting a claim of conspiracy to commit murder based on allegations that the plaintiff encountered people who
behaved antisocially while the defendants had incentives to retaliate against him), *aff'd*, 364 F. App'x 256 (7th Cir.
2010).

[7] All of the factors that favored dismissal in *Asahi* favor dismissal here: (1) Folksam would bear a severe
burden from litigating this Swedish dispute in a U.S. court under U.S. law; (2) the U.S. has no interest in this
dispute, which fundamentally concerns conduct between Swedish citizens and government agencies in Sweden; (3)
Plaintiffs include only one U.S. citizen, and he could more conveniently litigate this dispute in Sweden; (4) this
dispute would be more conveniently litigated in Sweden, where relevant witnesses are located and relevant
documents need not be translated; and (5) Sweden has a compelling interest in adjudicating claims about Swedish
conduct brought against prominent Swedish companies and Swedish government agencies.  *See* 480 U.S. at 113-16.

predicate statutes upon which Plaintiffs base their claims of RICO liability.

**A.      Plaintiffs Lack Standing Because They Have Not Pled U.S. Injuries that Are Actionable Under RICO.**

A plaintiff only has standing to sue under RICO if he is "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). As explained herein, a plaintiff can only invoke this provision by showing that he suffered an injury (1) in the United States, (2) to his business or property, (3) that was proximately caused by the defendant's illegal conduct. All of the injuries alleged in the Complaint fail to meet these three requirements and are thus insufficient to confer standing to sue under RICO.

The vast majority of the injuries alleged in the Complaint—including all the harms that Carlström and his companies allegedly endured abroad—are extraterritorial and thus not subject to redress under RICO. Under the presumption against extraterritoriality, a statutory provision must state clearly that it applies outside the United States, before it does. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016). The Supreme Court has explained that RICO does not include the requisite clear language and, thus, confers standing to sue only for a "domestic injury." *Id.* at 2106. Accordingly, only the injuries allegedly suffered by Brune, or by Carlström after April 2019—injuries allegedly suffered in the U.S.—can even potentially confer standing. Those alleged injuries fall into two categories: the derivative harms Carlström and Brune allegedly suffered in the U.S. from injuries to their business associates abroad, and Carlström's personal harms related to his attempted suicide. Neither confers standing.

The injuries Brune and Carlström allegedly sustained in the United States from alleged harms to their business associates abroad are indirect—and thus insufficient to confer RICO standing. Those injuries include (1) the alleged frustration of Brune's hope to one day

14

enter the U.S. mortgage business, which allegedly happened through Defendants' alleged

frustration of Plaintiffs' business plans in Sweden, and (2) the expense to Carlström of

remedying the alleged intrusion into his Cyprus company's email system.[8]  (*E.g.*, Compl. ¶¶ 126,

170-71, 266.)  Section 1964 requires that an alleged injury be caused "by reason of" illegal

acts—a term of art incorporating common law principles of proximate causation.  *Holmes v. Sec.*

*Inv'r Prot. Corp.*, 503 U.S. 258, 265, 268 (1992).  One is the directness principle: a plaintiff

generally cannot recover for injury that occurs by way of harms inflicted on another.  *Id.* at 268-

69.  Thus, the injuries Brune and Carlström allegedly sustained in the United States from alleged

harms to their business associates abroad are indirect—and thus insufficient to confer RICO

standing.  *See Manson v. Stacescu*, 11 F.3d 1127, 1130-33 (2d Cir. 1993) (rejecting standing to

sue for the looting of plaintiff's company, even though the looting made plaintiff, the company's

sole shareholder, personally responsible for a $450,000 loan).

　　　　　The remaining U.S. injuries that Plaintiffs allege—Carlström's alleged emotional

distress and attempted suicide—are not harms to "business or property" that are actionable under

RICO.  *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612 (S.D.N.Y. 2015)

("Personal damages, emotional damages, and physical damages" are insufficient to establish

RICO standing).  Thus, even if Plaintiffs plausibly suggested that Defendants conspired to kill

Carlström—and they have not—their RICO claims must still be dismissed.

### B.　Plaintiffs Have Not Pled U.S. Conduct that Is Actionable Under RICO.

　　　　　Plaintiffs' RICO claims should also be dismissed because the Complaint fails to

---

[8] The alleged frustration of Brune's (and Carlström's) supposed hope to enter the U.S. mortgage business fails to confer standing for the further reason that it created only speculative, future injury: "a cause of action does not accrue under RICO until the amount of damages becomes clear and definite."  *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003).  And the expense to Carlström from remedying the alleged intrusion into his Cyprus company's email system fails for the further reason that the Complaint does not plausibly suggest that any Defendant was connected to, let alone responsible for, the alleged intrusion.  *See* Section III, *infra*.

plausibly allege that any Defendant committed or agreed to commit acts violating all of the elements of any of the predicate offenses upon which Plaintiffs base their RICO claims.  For the majority of the alleged predicate offenses, Plaintiffs do not even allege facts relevant to the offense.  To the extent that the Complaint alleges acts relevant to certain offenses at all, those acts occurred outside the United States—and so outside the territorial reach of Plaintiffs' RICO claims.  As the Supreme Court has explained, Section 1962(c) does not in and of itself apply to extraterritorial conduct.  *RJR Nabisco*, 136 S. Ct. at 2101-02.  Instead, under the presumption against extraterritoriality, the statute applies to foreign conduct only to the extent the predicate offenses that a plaintiff cites independently apply to foreign conduct—and none of the pleaded predicates do.  *Id.*  The fundamental defects in Plaintiffs' allegations include:

   *Mail and Wire Fraud*.  The Complaint does not allege that any Defendant used the mails *anywhere* to defraud, much less the U.S. mails, as the mail fraud statute requires.  18 U.S.C. § 1341; *Bascuñán v. Elsaca*, 927 F.3d 108, 121-22 (2d Cir. 2019) ("The mail and wire fraud statutes do not indicate an extraterritorial reach.").  Likewise, the Complaint does not allege that any Defendant used U.S. wires to defraud, as the wire fraud statute requires.  18 U.S.C. § 1343; *Bascuñán*, 927 F.3d at 121-22.

   *Conspiracy and Attempt to Commit Mail and Wire Fraud*.  The Complaint does not allege that any Defendant conspired or attempted to commit acts in the United States violating the mail fraud or wire fraud statutes—and in any event, 18 U.S.C. § 1349 is not a valid RICO predicate.  *See* 18 U.S.C. § 1961(1); *Volmar Distributors, Inc. v. New York Post Co.*, 825 F. Supp. 1153, 1167 (S.D.N.Y. 1993) (conspiracy to commit federal crimes is not a valid RICO predicate).

*Conspiracy to Commit Murder Under Federal and State Law*.  The Complaint does not plausibly allege that any Defendant conspired to commit murder with respect to Carlström or anyone else (as explained in Section I.B., *supra*).

*Travel Act*.  The Complaint does not allege that any Defendant traveled or used any facility *anywhere* to promote defined "unlawful activity," including "extortion" or "bribery" in "violation of [U.S. law]"—much less allege that any Defendant did anything violating the statute in the United States.  18 U.S.C. § 1952; *see European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 140-41 (2d Cir. 2014) (holding that the Travel Act does not apply extraterritorially), *rev'd on other grounds*, 136 S. Ct. 2090 (2016).

*Money Laundering*.  The two pleaded money laundering predicates apply to non-U.S. citizens only when they engage in laundering transactions "in the United States," 18 U.S.C. § 1957(a), (d)(1)-(2), or "in part in the United States," *see id.* § 1956(f)(1).  All Defendants are Swedish, and the Complaint does not allege that any of them engaged in money laundering transactions in, or partly in, the United States.[9]

*Hobbs Act*.  The Complaint does not allege that any Defendant affected commerce through "robbery" or "extortion" anywhere in the United States, as the statute requires.  *See id.* § 1951 (applying only to "commerce over which the United States has jurisdiction"); *European Cmty.*, 764 F.3d at 140-41 (holding that "references to foreign commerce" do not suffice to rebut the presumption against extraterritoriality); *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 100-01 (D.D.C. 2017) (holding the Hobbs Act does not apply extraterritorially).

---

[9] Plaintiffs also fail to allege a valid predicate act of money laundering because the alleged extraterritorial acts of money laundering (*e.g.*, Compl. ¶ 46) are not alleged to have related to the alleged enterprise organized to harm Plaintiffs, nor any other racketeering acts alleged to have harmed Plaintiffs.  *See Bruno*, 383 F.3d at 84 (explaining that a successful RICO claim "must show that the racketeering acts relate both to one another and . . . to the enterprise").

Accordingly, not only Plaintiffs' claim under Section 1962(c), but also Plaintiffs' claim under Section 1962(d) must fail.  Plaintiffs have not plausibly alleged that any Defendant contemplated the commission of acts violating any predicate offense, as is required for a claim under Section 1962(d).  *See Sanchez v. ASA Coll., Inc.*, No. 14-CV-5006 JMF, 2015 WL 3540836, at *12 (S.D.N.Y. June 5, 2015).  And Plaintiffs also have not plausibly alleged that Folksam agreed to commit acts sufficient to violate Section 1962(c), as Section 1962(d) also requires.  *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014).

## III.   CARLSTRÖM'S CFAA CLAIM SHOULD BE DISMISSED.

The CFAA prohibits intentionally accessing "protected computer[s]" without authorization and thereby causing damage.  18 U.S.C. § 1030(a)(2), (a)(5).  Carlström's CFAA claim should be dismissed under F.R.C.P. 12(b)(6) because the Complaint does not plausibly allege that any Defendant accessed any computer without authorization.  The Complaint's sole allegation related to computer access states "there was an intrusion into the email account of one of [Carlström's] Cyprus companies" and the "origin of [that] intrusion was traced to Istanbul". (Compl. ¶ 266.)  No non-conclusory allegation ties the alleged intrusion to any Defendant.

Also, the Complaint does not allege U.S. conduct that might support liability under the CFAA.  Sections 1030(a)(2) and (a)(5) do not include clear language regulating foreign *conduct*, and thus can be violated only by U.S. conduct, which has not been alleged.[10]

Finally, the claim should be dismissed because Carlström alleges only derivative injury: the expense that he incurred in responding to an intrusion into his company's email

---

[10] *See Bascuñán*, 927 F.3d at 121-22 (explaining that statutes that fail to rebut the presumption against extraterritoriality can only be violated in cases of "domestic conduct").  While the CFAA *protects* computers that are "located outside the United States" and affect "interstate or foreign commerce", that does not mean the statute applies to wholly foreign attempts to access foreign computers.  18 U.S.C. § 1030(e)(2)(B).  By analogy, the wire fraud statute and Travel Act protect "foreign commerce," yet this language does not clearly indicate a statutory purpose of reaching wholly foreign conduct affecting that commerce, and thus has been held not to rebut the presumption against extraterritoriality.  *See European Cmty.*, 764 F.3d at 140-41.

system.  (Compl. ¶ 266.)  The CFAA, like RICO, only provides a civil action for injuries caused "by reason of a violation" of the statute.  18 U.S.C. § 1030(g).  That term of art indicates that Carlström cannot sue for injuries that are wholly derivative of harms to his companies, and thus indirect and not actionable.  *See Holmes*, 503 U.S. at 267-68 (explaining that indirect injuries are not actionable under RICO); *Manson*, 11 F.3d at 1130-33 (explaining that injuries derivative of harms to business associates are indirect).

## IV.    PLAINTIFFS' COMMON LAW CLAIMS SHOULD BE DISMISSED.

This Court should decline to exercise supplemental jurisdiction over, and should thus dismiss under F.R.C.P. 12(b)(1), Plaintiffs' common law claims, as all of Plaintiffs' federal claims should be dismissed for the reasons explained in Sections I and II.  *See* 28 U.S.C. § 1367(c)(3).  Adjudicating claims that involve the conduct of Swedish citizens in Sweden toward other Swedish citizens would not serve the ends of judicial economy, convenience, and fairness.[11]  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004).

Additionally, Plaintiffs' tortious interference claims should be dismissed under F.R.C.P. 12(b)(6).  Four Plaintiffs bring tortious interference claims based on alleged contracts with Nord and Exceed, and alleged business opportunities with Nord, Exceed, and Swedbank. (Compl. ¶¶ 308-18.)  Those claims are untimely with respect to Nord, because the relevant contract and opportunities allegedly ended in August 2016, (*id.* ¶¶ 122-24,) more than three years

---

[11] Even if the federal claims are deemed viable, the contract and tortious interference claims should still be dismissed for lack of supplemental jurisdiction, because they do not share a "common nucleus of operative fact" with the federal claims.  *Empire Merchants, LLC v. Reliable Churchill LLP*, 16-CV-5226 (ARR) (LB), 2017 WL 7512900, at *3 (E.D.N.Y. Jan. 30, 2017).  Because the contract claim is based on a contract and investment that were not alleged racketeering activity and took place before the alleged "racketeering enterprise" began, that claim cannot turn on the same facts as a viable RICO claim.  Because the tortious interference claims are based solely on extraterritorial conduct causing extraterritorial injury, they also cannot turn on the same facts as a viable RICO claim.

before this action was filed.[12]  *Ullmannglass v. Oneida, Ltd.*, 927 N.Y.S.2d 702, 704 (N.Y. App.

Div. 2011).  Vinacossa Enterprises AB's, Resurs Direkt's, and Boflex's claims fail with respect

to Exceed, because only Sparflex allegedly had a contract or opportunities with Exceed.  (Compl.

¶ 134.)  And Sparflex's claim for tortious interference with contract fails because Exceed was not

alleged to have been actually induced to breach the contract (*id.* ¶ 137) as that claim requires,

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996).  Finally, all of their

claims against Folksam for tortious interference with prospective business advantage fail with

respect to Swedbank, because an official at the Swedish Financial Supervisory Authority was

"the only person who knew" about the relevant alleged prospects and could potentially have

interfered with them.  (Compl. ¶¶ 180, 314.)

Additionally, the claim for intentional infliction of emotional distress should be

dismissed under F.R.C.P. 12(b)(6) because Plaintiffs do not plausibly allege that Folksam did

anything at all to Carlström after December 17, 2018, the cutoff for purposes of the statute of

limitations.  *Mariani v. Consol. Edison Co. of New York*, 982 F. Supp. 267, 273 (S.D.N.Y. 1997).

## V.      THE COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*.

Plaintiffs' claims should be dismissed under the doctrine of *forum non conveniens*

because the witnesses, evidence, and interests relevant to this dispute are overwhelmingly

located in Sweden.  Dismissal under this doctrine is appropriate when the plaintiffs' choice of

forum is not entitled to strong deference, an alternative forum is adequate to adjudicate the

dispute, and the balance of relevant private and public interests strongly favors adjudication in

---

[12] For purposes only of this motion—but without conceding the issue—Folksam assumes that New York law governs Plaintiffs' common law claims, as they assert.  *See Meserole v. Sony Corp. of Am.*, No. 08 CV. 8987 (RPP), 2009 WL 1403933, at *5 n.6 (S.D.N.Y. May 19, 2009) (explaining that "a detailed choice of law analysis would be premature" at the motion to dismiss stage).

the alternative forum. *Spencer Stuart Human Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*, 17cv2195(DLC), 2017 WL 4570791, at *4-5 (S.D.N.Y. Oct. 12, 2017). These factors point decisively toward adjudication of this dispute in Sweden.

>    **A.      Plaintiffs' Choice of Forum Deserves Little Deference.**

Plaintiffs' choice of forum deserves deference only to the extent it was motivated by convenience, and should be denied to the extent it was motivated by forum shopping. *Mayer v. Time, Inc.*, 17cv5613(DLC), 2018 WL 1738322, at *2-3 (S.D.N.Y. Apr. 9, 2018) (citing *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005)). An inference of forum shopping is appropriate when (1) plaintiffs do not reside conveniently near their chosen forum; (2) the relevant witnesses and evidence are more easily accessed in an alternative forum; (3) defendants are amenable to suit in the alternative forum; (4) plaintiffs have access to appropriate legal assistance in the alternative forum; and (5) the chosen forum would be costlier or more inconvenient for defendants. *See id.* Each of those factors suggest that forum shopping motivated Plaintiffs' choice of New York for this dispute, over Sweden.

*First*, Plaintiffs do not reside conveniently near this Court. The sole Plaintiff domiciled in New York is Brune—a minor figure in the Complaint who had no alleged interactions with any Defendant. Meanwhile, four other Plaintiffs are domiciled in Sweden, and Carlström is allegedly traveling throughout the United States. (Compl. ¶¶ 6-12.)

*Second*, litigation of this dispute in New York would be inconvenient for everyone because the vast majority of relevant witnesses and evidence are in Sweden. Of all the events described in the Complaint's 74 pages, only four allegedly happened in New York: BlackRock invested Resurs Direkt's funds in certain accounts, Carlström formed a business plan with Brune, an unknown person tried to break into Carlström's hotel room, and an unknown person followed Carlström around a hotel. (*Id.* ¶¶ 30, 126, 251, 259-60.) Those events may call

for examination of some witnesses and documents based in New York—but certainly not many.

By contrast, the number of potentially relevant witnesses and documents in Sweden is large: the key people affiliated with all seven Defendants, and the communications by and between those people; the people affiliated with key nonparty entities that allegedly interacted with the Defendants (such as Nord and Exceed) and the communications by those people; and the hundreds of nonparty customers whom Defendants allegedly prevented from transacting with Carlström.  (*Id.* ¶¶ 13-19, 39-69, 92-142.)  The logistics of reaching those witnesses would preclude in-court testimony that could be available in Sweden and significantly raise the costs of proceedings in this Court.  (*See* Andersson Decl. ¶ 14.)  And those costs would rise further still through the need to translate the bulk of the discovered documents—a daunting undertaking given Plaintiffs' wide-ranging allegations spanning multiple years and numerous Swedish people and entities.  (*See id.* ¶¶ 8-9.)

*Third*, the Defendants are all domiciled in the forum that is the most convenient for adjudication of this dispute—Sweden—and could be served with process there.  (*See id.* ¶¶ 12-13.)

*Fourth*, there is no reason to infer that appropriate legal assistance is unavailable to Plaintiffs in Sweden.  Neither Plaintiffs' allegations about officials at the Swedish Financial Supervisory Authority and the Swedish Tax Agency, nor any of their other allegations, suggest that Plaintiffs would not receive a full and appropriate hearing in court in Sweden.

*Fifth*, as explained in Section II, *supra*, Plaintiffs have tried to squeeze a foreign commercial dispute into a domestic RICO claim.  This shows the Complaint for what it is—an obvious attempt at forum shopping.  *See Wilson v. ImageSat Int'l N.V.*, No. Civ. 6176(DLC), 2008 WL 2851511, at *5 (S.D.N.Y. July 22, 2008) (plaintiffs' choice to seek treble damages

unavailable in the alternative forum "brings heightened pressure to settlement discussions" and supports an inference of forum shopping).  Such forum shopping should be rejected.

**B.      Sweden Is an Adequate Alternative Forum.**

"Ordinarily, the requisite of an adequate alternate forum is satisfied where the defendant is 'amenable to process' in the alternate jurisdiction."  *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1123 (S.D.N.Y. 1992) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55, 254 n.22 (1981)).  Here, Folksam and all other Defendants reside in, and could be served with process in, Sweden.  (*See* Andersson Decl. ¶¶ 12-13.)  And this case does not present the "rare circumstances" in which the alternate jurisdiction is inadequate because the remedy available there "is 'so clearly inadequate or unsatisfactory that it is no remedy at all.'"  *Doe*, 807 F. Supp. at 1123 (quoting *Piper Aircraft*, 454 U.S. at 254-55, 254 n.22).  Sweden would allow litigation of the basic wrongs alleged in this commercial dispute, like breach of contract, fraud, and tortious interference.[13]  Sweden is thus certainly an adequate alternative forum.

**C.      Relevant Private Interests Strongly Favor Adjudication in Sweden.**

Private interests favor dismissal when (1) the cost for relevant witnesses to attend trial would be lower in the alternative forum than the chosen one; (2) the relevant witnesses and evidence would be more easily accessed in the alternative forum; and (3) relevant witnesses and evidence are outside the court's powers of compulsory process in the chosen forum.  *See In re*

---

[13] *See, e.g.*, *Snöfrost AB v. Håkansson*, 353 F. Supp. 3d 99, 107 (D. Mass. 2018) (holding that Sweden was adequate to adjudicate contract claims); *Online Payment Sols. Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 384-85 (S.D.N.Y. 2009) (holding that Sweden was adequate to adjudicate claims based on fraud and deceptive trade practices); *Blimpie Int'l, Inc. v. ICA Menyforetagen AB*, No. 96 CIV. 3082 (RWS), 1997 WL 143907, at *5 (S.D.N.Y. Mar. 25, 1997) (holding that Sweden was adequate to adjudicate claims based on tortious interference); *see also Norex Petroleum*, 416 F.3d at 158 ("[M]ost foreign jurisdictions provide alternative legal actions to address the wrongdoing encompassed by civil RICO").

*Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 276 (S.D.N.Y. 2010) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)).  Those factors favor dismissal in this case.

The first and second factors point toward adjudication in Sweden because, as explained above, the vast majority of potentially relevant witnesses and documents are in Sweden.  And the third factor points toward adjudication in Sweden because many of the potentially relevant witnesses are Swedish nonparties, outside this Court's subpoena power.[14] For example, the Complaint alleges that Folksam used "improper tactics" to convince "nearly 500" Swedish customers to keep their investments away from the nonparty company Exceed, and that Folksam thereby tortiously interfered with business relations between Exceed and Plaintiff Sparflex.  (Compl. ¶¶ 140-42, 313-18.)  The testimony necessary to resolve that claim would likely have to be sought through the Hague Convention, which could result in gaps in the record and a deficit of live testimony in the jury trial that Plaintiffs demand.[15]

### D.    Relevant Public Interests Strongly Favor Adjudication in Sweden.

Public interests favor dismissal when, among other factors, (1) a trial of the dispute would be more efficient in the alternative forum than the chosen one; (2) that trial would impose a significant burden on the jurors of the chosen forum for a dispute that does not implicate forum interests; (3) people in the alternative forum have an interest in convenient access to a trial of the dispute; and (4) people in the alternative forum have an interest in resolving the dispute themselves.  *See Wilson*, 2008 WL 2851511, at *3, *7 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001)).  Those factors favor dismissal in this case.

---

[14] *See Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs.*, 421 F. Supp. 2d 741, 768 (S.D.N.Y. 2006) ("The fact that defendant's nonparty witnesses are not subject to the Court's compulsory process weighs heavily in favor of dismissal.").

[15] *See Strategic Value*, 421 F. Supp. 2d at 769.  The Hague Convention's application to that and other essential nonparty testimony would not only potentially make the proceedings less complete but also longer, as that process can generate delay and disputes that require court intervention.  *See In re Alcon*, 719 F. Supp. 2d at 276.

The first factor favors dismissal because a trial of this dispute here would be laden not only with all the inefficiencies created by the relevant Swedish witnesses and documents, but also the inefficiency of deciding issues of Swedish law, which forms the basis for many of the Complaint's assertions of impropriety (*e.g.*, Compl. ¶¶ 51, 108-09, 114, 156).  The second factor also favors dismissal because the United States has no interest in applying U.S. law to a dispute about how some Swedish citizens acted in Sweden toward other Swedish citizens.

The third and fourth factors favor dismissal because the Swedish public has a compelling interest in this dispute.  The Defendants include not only two agencies of the Swedish government, but also an insurance company and bank that serve a large proportion of Sweden's population.  (Andersson Decl. ¶ 4.)  Plaintiffs seek to hold the Defendants jointly and severally liable for $12.8 billion—a sum that is well more than twice the annual revenue of Folksam or Swedbank.[16]  (*Id.* ¶ 11.)  Any trial should be held in a place and language that is convenient for the Swedish public, in Swedish courts with expertise and interest in applying Swedish law.

For all those reasons, Folksam respectfully submits that this action should be dismissed in favor of Sweden, pursuant to the doctrine of *forum non conveniens*.

## CONCLUSION

For the foregoing reasons, Folksam respectfully submits that the Complaint against it should be dismissed with prejudice.

---

[16] SWEDBANK, 2019 ANNUAL AND SUSTAINABILITY REPORT 13 (2020) (showing that Swedbank made approximately 45,960 million Swedish Krona in total income in 2019).  This Court may take judicial notice of "relevant matters of public record" that are "not subject to reasonable dispute."  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

Dated:  June 26, 2020

CRAVATH, SWAINE & MOORE LLP,

by

Timothy G. Cameron
Benjamin Gruenstein
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
tcameron@cravath.com
bgruenstein@cravath.com

*Attorneys for Defendant Folksam*
*ömsesidig livförsäkring*

26