UNITED STATES DISTRICT COURT
 SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                       :
VICTOR CARLSTRÖM, STEPHEN BRUNE,       :
VINACOSSA ENTERPRISES AB, VINACOSSA    :
ENTERPRISES LTD, BOFLEXIBILITET        :      19cv11569 (DLC)
SVERIGE AB, SBS RESURS DIREKT AB and   :
SPARFLEX AB,                           :      CORRECTED OPINION
                                       :         AND ORDER[1]
                       Plaintiffs,     :
                                       :
                                       :
               -v-                     :
                                       :
FOLKSAM ÖMSESIDIG LIVFÖRSÄKRING,       :
SWEDBANK AB, SKATTEVERET,              :
FINANSINSPEKTIONEN, JENS HENRIKSSON,   :
ERIK THEDÉEN, KATRIN WESTLING PALM and :
others known and unknown,              :
                                       :
                       Defendants.     :
                                       :
---------------------------------------X

APPEARANCES

For plaintiffs:
Lawrence Schoenbach
Law Offices of Lawrence H. Schoenbach
111 Broadway
New York, NY 10006

Joshua Dratel
Law Offices of Joshua L. Dratel, P.C.
29 Broadway, Suite 1412
New York, NY 10006

For defendant Folksam Ömsesidig Livförsäkring:
Benjamin Gruenstein
Timothy Cameron
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

---

[1] The only corrections made in this Corrected Opinion and Order are to the dates referencing the defendants' motions set forth in the Conclusion.

For defendants Swedbank AB and Jens Henriksson:
Christopher Kercher
William Burck
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue
22nd Floor
New York, NY 10010

For defendants Skatteverket, Finansinspektionen, Katrin Westling
Palm, and Eric Thedéen:
Claire Angela DeLelle
Nicole Erb
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Susan Laura Grace
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020

DENISE COTE, District Judge:

Plaintiffs bring this action against private and
governmental entities and individuals located in Sweden.  The
defendants, plaintiffs allege, were part of a conspiracy to ruin
the reputation of plaintiff Victor Carlström ("Carlström") after
he discovered that defendant Folksam Ömsesidig Livförsäkring
("Folksam") and others were engaged in fraudulent investment
schemes.  This conspiracy has damaged Carlström's businesses
and, he believes, has led to his harassment in New York and Los
Angeles.  This Opinion dismisses plaintiffs' claims under the
doctrine of <u>forum non conveniens</u>.

**Background**

The following facts are taken from the first amended complaint ("FAC").  Carlström is a Swedish citizen currently residing and seeking asylum in the United States.  He is joined as plaintiff by several of his Swedish or Cypriot companies: Vinacossa Enterprises, Ltd. ("Vinacossa Ltd."), Vinacossa Enterprises AB ("Vinacossa AB"), SBS Resurs Direkt AB ("Resurs Direkt"), Sparflex AB ("Sparflex"), and Boflexibilitet Sverige AB ("Boflex").  The final plaintiff is Stephen Brune ("Brune"), a business associate who resides in New York.

The defendants include three Swedish financial institutions, Folksam, Swedbank AB ("Swedbank"), and Skandinaviska Enskilda Banken AB ("SEB"); two Swedish governmental institutions, Skatteverket ("Swedish Tax Agency") and Finansinspektionen ("Swedish Financial Regulator") (collectively, the "Swedish Government Defendants");[2] and three Swedish residents associated with those entities.  Jens Henriksson ("Henriksson") was the President and CEO of Swedbank and before that the President and CEO of Folksam.  Eric Thedéen ("Thedéen") was the Director-General of the Swedish Financial Regulator, and Katrin Westling Palm was the Director-General of the Swedish Tax Agency.

---

[2] This Opinion refers to these entities by the English equivalents of their names.

3

Carlström worked as a financial advisor in Sweden from 2006 to 2015.  At the center of this case is Carlström's business relationship through his company Resurs Direkt with Folksam.  In June 2013, Resurs Direkt became Folksam's agent in Sweden and operated under Folksam's financial licenses.  Resurs Direkt invested its clients' funds through Folksam and maintained those funds at Folksam.  Through Folksam, Carlström invested over $150 million of Resurs Direkt's clients' funds in a BlackRock fund, that in turn invested all of those funds through its New York accounts (the "BlackRock Funds").  BlackRock paid commissions to Folksam, which would transfer the commissions to Resurs Direkt and Carlström in Sweden.

In 2014, Carlström's clients began inquiring about their investments at Folksam.  When Carlström relayed these inquiries to Folksam, he was rebuffed.  Carlström then began conducting his own due diligence into Folksam.  Carlström discovered several illegal schemes carried out by the defendants, with Folksam at the center.  Carlström asserts, for instance, that he uncovered evidence of an illegal kickback scheme that occurred in 2011 to 2012 involving thousands of Swedish pension accounts.

In early 2015, after Carlström raised his concerns about Folksam's business practices, his relationship with Folksam frayed.  This began, Carlström alleges, the scheme to silence

him.  In September 2015, Folksam cancelled its contract with Resurs Direkt and refused to pay Resurs Direkt approximately $12 million in commissions due on the investments in the BlackRock Funds.

Thereafter, Folksam told existing or prospective Carlström clients that he had engaged in fraud.  Some of Carlström's clients requested that Folksam transfer their accounts to another Swedish bank affiliated with Carlström; Folksam refused.

Carlström asserts that the Swedish Tax Agency and Financial Regulator joined the defendants' campaign in 2016.  In August 2016, for instance, the Swedish Financial Regulator issued a report accusing Resurs Direkt of malfeasance.  The Swedish Tax Agency likewise initiated an investigation of Carlström and his companies in October 2017.

The Swedish Financial Regulator and Tax Agency also acted to frustrate Carlström's new business ventures.  In late 2016, Carlström traveled to New York to discuss forming two companies -- plaintiffs Boflex and Sparflex -- with Brune.  The two companies would enter the mortgage market in Sweden and later in the United States.  Carlström formed Sparflex in Sweden and signed an agreement with Exceed Capital AB ("Exceed") to manage Sparflex's funds.  Carlström convinced "nearly 500 clients" whose accounts were still at Folksam to move their accounts to

Exceed.  Once again, Folksam either pressured the clients to keep their accounts at Folksam or simply refused to honor requests to transfer the accounts to Exceed.  The Swedish Financial Regulator pressured Exceed to cancel its agreement with Sparflex.

Carlström formed Boflex in March 2018.  In July 2018, Boflex applied for a license to distribute mortgages in Sweden. Between September 2018 and April 2019, the Swedish Financial Regulator denied the application, Boflex's appeal of that decision, and an amended application.  During this period, the Swedish Tax Agency initiated investigations into Sparflex and Vinacossa AB.

Meanwhile, in the summer of 2018, Carlström identified Swedbank as a partner for Sparflex and Boflex.  Shortly after Boflex's attorneys notified the Swedish Financial Regulator of its negotiations with Swedbank, Swedbank declined to enter a partnership with Sparflex or Boflex.  Swedbank cited the same allegations of fraud that Folksam and the Swedish Financial Regulator had been making against Carlström.  Swedbank's abrupt withdrawal prompted Carlström to look into Swedbank's finances. He discovered it was engaged in international money laundering.

SEB is alleged to have joined defendants' conspiracy in 2017.  SEB provided the Swedish Tax Agency with confidential

banking and personal information about Carlström and his
companies.  Carlström asserts that SEB joined the conspiracy to
silence Carlström after he discovered that bank's involvement in
international money laundering and public corruption.

The remaining defendants -- Henriksson, Thedéen, and
Westling Palm -- are accused of wrongdoing that occurred in
Sweden between 2011 and the present.  Those individuals are
alleged to have used their positions in the Swedish financial
and government institutions to carry out the illegal schemes
that Carlström uncovered.  When Carlström discovered these
schemes, these individuals spearheaded the effort to silence
him.

In early 2019, Carlström and his family fled Sweden for the
United Arab Emirates.  While there, Carlström found "ongoing
financial fraud and money laundering on an international scale"
by the defendants.  Carlström sent his findings to Westling Palm
and other Swedish officials.  Soon thereafter, Carlström noticed
that unidentified individuals began harassing and threatening
him and his family.  They fled Europe for New York, where they
arrived on April 24, 2019.

Carlström alleges that he and his family faced harassment
in New York as well.  Specifically, on May 3, 2019, an unknown
person used a stolen key to attempt to enter the hotel room he

shared with his family.  Around this time, Carlström asserts
that someone hacked into the computer system of a Cypriot
company he owns.  Carlström was not able to identify the hacker
beyond determining that the activity originated in Turkey.

After Carlström was followed in New York by an unknown
person for two days in July 2019, Carlström fled to Los Angeles.
There, he was followed again.  Even now, Carlström's security
detail is concerned for his safety and he moves hotels
frequently.  In October 2019, Carlström met with federal
prosecutors in New York.

The plaintiffs filed this action on December 17, 2019, and
the FAC on July 10, 2020.  Each plaintiff brings a civil
Racketeering Influenced and Corrupt Organizations Act ("RICO")
claim against all defendants pursuant to 18 U.S.C. § 1962(c).
The FAC alleges that the RICO enterprise was formed to ruin
Carlström's reputation and prevent him from revealing the
financial malfeasance he discovered.  The FAC pleads seven
predicate acts of racketeering:  mail fraud in violation of 18
U.S.C. § 1341; wire fraud in violation of 18 U.S.C. § 1343;
conspiracy to commit murder in violation of N.Y. Penal Law §§
125.25 & 105.15; travelling internationally to defraud Carlström
in violation of the Travel Act, 18 U.S.C. § 1952; money
laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and

(B)(i) & 1956(a)(2)(A) and (B)(i) & 1956(h) & 1956(b)(2); money laundering in violation of 18 U.S.C. § 1957(a); and Hobbs Act robbery in violation of 18 U.S.C. § 1951.  Each plaintiff also brings a claim against each defendant for engaging in a RICO conspiracy based on the same acts, in violation of 18 U.S.C. § 1962(d).  Carlström alone brings a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, <u>et. seq.</u>, against each defendant related to the hacking of the computer system of his Cypriot company.

Various plaintiffs also assert common-law claims against the defendants.  Resurs Direkt brings a breach of contract claim against Folksam for cancelling the agreement between those parties and refusing to pay Resurs Direkt brokerage commissions. Vinacossa AB, Resurs Direkt, Sparflex, and Boflex bring a claim of tortious interference with contract against Folksam, Swedbank, Henriksson, Thedéen, and Westling Palm in relation to those entities' interference with the contracts with third parties.  Those same plaintiffs bring a claim of tortious interference with prospective business advantage against Folksam, Swedbank, SEB, Henriksson, Thedéen, and Westling Palm. Lastly, Carlström asserts a claim of intentional infliction of emotional distress against all defendants.

Folksam, Henriksson, and Swedbank filed this motion to dismiss on July 31, 2020.  Those entities assert that this Court lacks jurisdiction over the defendants; that the SAC fails to state a claim under RICO, the CFAA, or New York common law; and that in any event this action should be dismissed under the doctrine of forum non conveniens.  The Swedish Government Defendants, Thedéen, and Westling Palm moved for dismissal on August 21.  In addition to the grounds for dismissal asserted by Folksam, Henriksson, and Swedbank, the Swedish Government Defendants, Thedéen, and Westling Palm assert that they are immune from suit under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1604, et seq., and that international comity requires this Court to abstain from adjudicating the acts of a foreign state.  The motions were fully submitted on September 25.[3]

## Discussion

Each of the moving defendants contests this Court's jurisdiction.  This Opinion will address the issue of forum non

---

[3] An Order of August 19 adjourned SEB's deadline to respond to the FAC pending the disposition of the other defendants' motions to dismiss.

conveniens without deciding whether there is personal jurisdiction over the defendants.[4]

Deciding a motion to dismiss on the ground of forum non conveniens requires a three-part analysis.  First, a court determines the "degree of deference properly accorded the plaintiff's choice of forum."  Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citation omitted).  Next, it considers "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute."  Id. (citation omitted).  Lastly, a court balances "public interest factors" and "private interest factors" to ascertain whether the case should proceed in plaintiffs' chosen forum.  Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc); see also Norex Petroleum Ltd., 416 F.3d at 153.

   A. Deference to Plaintiffs' Choice of Forum

---

[4] "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits."  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (citation omitted).  The doctrine of forum non conveniens is one such threshold issue and involves "a non-merits based decision akin to dismissal for lack of personal jurisdiction."  Dattner v. Conagra Foods, Inc., 458 F.3d 98, 102 (2d Cir. 2006).  Accordingly, courts may bypass issues of personal jurisdiction if another non-merits issue would dispose of the case.  Sinochem Int'l Co., 549 U.S. at 432.

The Second Circuit Court of Appeals has held that "the degree of deference given to a plaintiff's forum choice varies with the circumstances."  Iragorri, 274 F.3d at 71.  In Iragorri, the Court of Appeals explained that a plaintiff's choice of forum falls "'on a sliding scale' depending on the degree of convenience reflected by the choice in a given case." Norex Petroleum Ltd., 416 F.3d at 154 (quoting Iragorri, 274 F.3d at 71).  In doing so, courts must consider "the totality of circumstances supporting a plaintiff's choice of forum."  Norex Petroleum Ltd., 416 F.3d at 154.

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.  Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens.  On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts.

Id. at 154-55 (quoting Iragorri, 274 F.3d at 71-72).

In determining whether a plaintiff's choice of forum is motivated by convenience, a court should consider the following factors:

> (1) the convenience of the plaintiff's residence in relation to the chosen forum, (2) the availability of witnesses or evidence to the forum district, (3) the defendant's amenability to suit in the forum district, (4) the availability of appropriate legal assistance, and (5) other reasons relating to convenience or expense.

Norex Petroleum Ltd., 416 F.3d at 155 (quoting Iragorri, 274 F.3d at 72).

The Second Circuit has also identified several indicia of forum shopping:

> (1) attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, (2) the habitual generosity of juries in the United States or in the forum district, (3) the plaintiff's popularity or the defendant's unpopularity in the region, or (4) the inconvenience and expense to the defendant resulting from litigation in that forum.

Norex Petroleum Ltd., 416 F.3d at 155 (quoting Iragorri, 274 F.3d at 72).  A court should afford "diminished" solicitude to "a plaintiff's choice of forum where the plaintiff has actively sought international business and the cause of action does not have significant ties to the plaintiff's home forum."  Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234, 237 (2d Cir. 2004).

Taken together, the plaintiffs' choice of forum is entitled to little or no deference.  No deference is owed to the choice made by the plaintiff-entities.  Each of the plaintiff-entities is a foreign business and brings claims against Swedish

13

individuals, entities, and government agencies based on events
that occurred in Sweden and that caused injury to them in
Sweden.

Carlström's choice of forum is entitled to very little
deference.  Carlström is not a New York resident or a United
States citizen, although he has applied for asylum in this
country.  The core of his claims concerns actions taken by
Swedish entities, agencies, and individuals against Carlström's
foreign companies in Sweden.  Indeed, the genesis of this
dispute is Resurs Direkt's contract with Folksam, a transaction
that has no connection to this forum.  The misconduct that is
alleged to have followed that agreement likewise involved
defendants' plans that were devised and carried out in Sweden by
Swedish actors.  Swedish authorities and courts have a
significant interest in addressing and resolving Carlström's
allegations of skullduggery in Swedish financial and government
institutions; New York, by contrast, has no connection to these
allegations.

Carlström alleges that wrongdoing of an entirely different
nature occurred in New York.  He asserts that in May 2019
someone attempted to enter his hotel room and a few weeks later
someone tailed him.  Those perpetrators have not been
identified, but Carlström assumes that the defendants are

14

responsible for that harassment because they possess the motive
to harm him.  Even if his assumption is correct, this
frightening activity is tangential to the events at the center
of this lawsuit, the commercial fraud and corruption that
Carlström asserts victimized his companies in Sweden.  These two
New York events do not alter the fact that little or no
deference is owed to Carlström's choice of New York as the forum
for his claims based on the defendants' conduct in Sweden.
Carlström's only other alleged tie to this jurisdiction is
through Resurs Direkt's investment in the BlackRock Funds.  But
Resurs Direkt's injury was sustained in Sweden when a Swedish
defendant refused to pay Resurs Direkt commissions on those
investments.

Finally, Brune's choice of forum is entitled to minimal
deference.  While he is a New York resident, Brune has a very
limited role in this litigation.  He has no connection
whatsoever to the bulk of the alleged Swedish financial
wrongdoing and corruption.  The FAC mentions Brune only as a
potential partner in Carlström's Swedish mortgage venture.  To
the extent Brune has been injured because that venture failed,
those injuries have no relationship to his New York domicile;
they are entirely the result of his foray into international
business and his expectations for an inchoate Swedish venture.

Like the other plaintiffs, Brune's claims are brought against
Swedish entities and individuals who acted in Sweden.  It is of
no moment that Brune may have hoped to bring that business to
this country someday.  There are no allegations that Sparflex or
Boflex ever entered the U.S. market or that Brune was injured
other than as a businessman attempting to do business in Sweden.

These facts and others suggest that the choice of New York
as the forum is tactical.  An assessment of the burden that
these foreign defendants would face from litigating in this
forum only underscores that conclusion.  The discovery required
to address the FAC's claims against these Swedish financial and
government institutions would be immense and complex.  Moreover,
witnesses are largely if not entirely beyond this Court's
subpoena power and document discovery will require engagement
with European data and privacy laws.  While plaintiffs aver that
"critical witnesses" are located here, they identify only
plaintiff Brune and Carlström.

The principal benefit of this forum for the plaintiffs
would appear to be the prospect of treble damages under the RICO
statute.  18 U.S.C. § 1964(c).  That, however, is not a
legitimate reason for choosing this forum.

Turning to the third consideration, all of the moving
defendants contest this Court's jurisdiction over them in this

16

suit.[5]  There are also serious issues of foreign sovereign immunity.

In sum, neither Brune's peripheral involvement nor Carlström's U.S. residency alters the inescapable fact that this is essentially a dispute between foreigners about foreign commercial transactions.  The plaintiffs' choice of forum is therefore entitled to little or no deference.

B. Adequacy of the Alternative Forum

Sweden would provide the plaintiffs with an adequate forum for their claims.  A forum is generally adequate if defendants are amenable to service of process there.  A forum may not be adequate, however, if the remedies available are "clearly unsatisfactory," such as where the alternative forum "does not permit litigation of the subject matter in dispute."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981).  The alternative forum is not inadequate simply because it does not afford plaintiffs the identical causes of action or relief available in the plaintiffs' chosen forum.  Norex Petroleum Ltd., 416 F.3d at 158-59.  Specifically, "the nonexistence of a RICO statute there does not, by itself, preclude the use of another forum."  PT United Can Co. v. Crown Cork & Seal Co., 138

---

[5] While SEB has yet to respond to the FAC, it has represented that there would be "substantial overlap" between its arguments for dismissal and those made by the moving defendants.

F.3d 65, 74 (2d Cir. 1998).  Indeed, even without a precise
analogue to the U.S. RICO statute, "most foreign jurisdictions
provide alternative legal actions to address the wrongdoing
encompassed by civil RICO."  Norex Petroleum Ltd., 416 F.3d at
158-59.

Sweden has a long-established and well-developed legal
system with many procedural safeguards for the parties who
appear there.  Moreover, evidence submitted on this motion
indicates that the plaintiffs may bring claims in Sweden for
damages resulting from the alleged conspiracy to silence
Carlström and to destroy his companies, the alleged hacking of
his computer, the tortious interference with his contracts, and
the intentional infliction of emotional distress.  Plaintiffs do
not assert that any of the defendants could evade service of
process in Sweden or avoid the jurisdiction of that country's
courts.  Indeed, Folksam has declared that it would submit to
service of process in Sweden.

Plaintiffs do not squarely address the adequacy of Sweden
as a forum for this lawsuit.  They seem to suggest that Swedish
courts may be biased in favor of the Swedish defendants,
particularly the Swedish Government Defendants.  The Second
Circuit Court of Appeals has been "reluctant to find foreign
courts 'corrupt' or 'biased.'"  In re Arbitration Between

18

Monegasque De Reassurances S.A.M. v. Nak Naftogaz Of Ukraine,
311 F.3d 488, 499 (2d Cir. 2002) (citation omitted).  In order
for an alternative forum to be inadequate for reasons of
corruption or bias, a plaintiff must show that "the alternative
forum is characterized by a complete absence of due process or
an inability of the forum to provide substantial justice to the
parties."  Id.  "[C]onclusory submissions" and "sweeping
generalizations" about the alternative forum's legal system will
not do.  Id.  Plaintiffs have not attempted to show that
Sweden's courts would be unable to provide the plaintiffs with
substantial justice.

   C. Private and Public Interests

     Having concluded that the plaintiffs' choice of forum is
due substantially diminished deference and that Sweden would be
an adequate forum, the moving defendants' motion for dismissal
turns on a balancing of the private and public interests.  Those
factors weigh heavily in favor of dismissal.

> Private interest factors include:
> the relative ease of access to sources of proof;
> availability of compulsory process for attendance of
> unwilling, and the cost of obtaining attendance of
> willing, witnesses; possibility of view of premises,
> if view would be appropriate to the action; and all
> other practical problems that make trial of a case
> easy, expeditious and inexpensive.

Iragorri, 274 F.3d at 73-74 (citation omitted).  The public
interest factors a court may consider include: the

administrative inefficiency in trying a case in a busy court and
away from the locus of the injury; the burden that jury duty may
impose on the community if the case is tried in a venue with no
connection to the issues in dispute; a jurisdiction's interest
in having a local case decided at home; and the benefits to
having a matter tried in the forum whose law will govern the
case.  Id. at 74.

     For the reasons already discussed, the private interest
factors support dismissal.  Not a single defendant is
incorporated in the United States.  While some defendants are
licensed to do business and have offices in New York, there is
no allegation that their U.S. business gave rise to plaintiffs'
injuries or that evidence relevant to the claims is located
here.  Indeed, the gravamen of the FAC rests on Carlström's
dealings with Folksam in Sweden and the corruption in Sweden
that he says he uncovered as a result of that work.  Because
none of the pertinent transactions took place in this country,
the burden on the parties of litigating the claims here would be
enormous.  Likewise, Carlström's contention that the defendants
instituted a smear campaign against him would require the
testimony of witnesses who are beyond the subpoena power of this
Court.  Plaintiffs have not identified a single nonparty witness
who could be called to testify in this case.  The private

interest factors do not support the conduct of this expensive
and inconvenient litigation in New York to resolve a Swedish
business dispute and its aftermath in Sweden.

The public interest factors are similarly one-sided.
Sweden's interest in resolving this case is great.  The FAC
implicates Swedish governmental agencies and some of that
country's largest financial institutions in a sprawling scheme
to defraud pensioners and others innocent citizens.
Furthermore, once that scheme was detected, the FAC alleges that
those Swedish institutions and officials instituted a
coordinated campaign to silence a Swedish citizen.  Sweden is
due the opportunity to adjudicate that alleged breach of public
trust and injury to its citizens in the first instance.

While New York has some interest in protecting the business
interests of its citizens when they operate abroad, that
interest pales in this case when compared to Sweden's interest.
And, as one would expect, there are significant questions of
Swedish law looming in the background of this litigation.
Courts in Sweden are best equipped to decide those questions.
See Piper Aircraft, 454 U.S. at 251 ("The doctrine of forum non
conveniens . . . is designed in part to help courts avoid
conducting complex exercises in comparative law.").

Plaintiffs briefly assert that Carlström cannot leave the
United States because of his pending asylum application in this
country.  That is not true.  Asylum applicants may be permitted
to travel internationally after requesting Advance Parole from
the United States Citizenship and Immigration Services.  See
U.S. Citizenship and Immigration Services, Fact Sheet: Traveling
Outside the United States as an Asylum Applicant, an Asylee, or
a Lawful Permanent Resident Who Obtained Such Status Based on
Asylum Status, U.S. Dep't Homeland Sec. (Dec. 27, 2006),
available at https://www.uscis.gov/sites/default/files/document/
news/Asylee_travel_information.pdf.[6]  Nor does Carlström argue
that he would be foreclosed from participating in legal
proceedings in Sweden remotely.  Carlström's asylum application
cannot overcome the weight of the analysis recited above.

### Conclusion

The defendants' motions of July 31 and August 21, 2020 are

---

[6] The Court may take judicial notice of the availability of
advance parole for asylum applicants.  Giraldo v. Kessler, 694
F.3d 161, 164 (2d Cir. 2012) (citation omitted) (noting that a
court may take judicial notice of "relevant matters of public
record" that are "not subject to reasonable dispute.").

granted.

Dated:     New York, New York
           December 14, 2020

                              _____
                                    DENISE COTE
                           United States District Judge